UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

-------------------------------------------------x

JAGUAR CARS, A Division of the Ford Motor Company,

                Plaintiff,

   - against -

LEE IMPORTED CARS, INC.,

                Defendant.

-------------------------------------------------x

Civ. No.

**COMPLAINT**

Plaintiff Jaguar Cars, a Division of the Ford Motor Company ("Jaguar"), by its attorneys, Kirkpatrick & Lockhart LLP, for its complaint herein, hereby alleges as follows:

### PARTIES

1. Jaguar is a division of the Ford Motor Company, a corporation organized under the laws of Delaware with its principal place of business in Dearborn, Michigan.

2. Defendant Lee Imported Cars, Inc., d/b/a Lee Jaguar ("Lee") is a corporation organized under the laws of Massachusetts with its principal place of business at 962 Worcester Road, Wellesley, Massachusetts 02482-3725.

### JURISDICTION AND VENUE

3. This Court has original jurisdiction of the subject matter of this action under 28 U.S.C. § 1332, in that this is an action between citizens of different states where the matter in controversy exceeds the sum or value of $75,000.

4. Venue is proper in this district pursuant to 28. U.S.C. § 1391(a), in that the defendant resides in this District and a substantial part of the events giving rise to the claim occurred in this District.

## NATURE OF ACTION

5. This is an action for a declaratory judgment pursuant to 28 U.S.C. § 2201. As shown further below, there is an actual controversy between the parties, making it appropriate for this Court to declare the legal rights of the parties with respect to that controversy.

6. Lee is a Jaguar dealer in Wellesley, Massachusetts.

7. By letter dated August 25, 2003, Jaguar advised Lee that Jaguar intends to add a Jaguar dealership in Norwood, Massachusetts.

8. Lee has implicitly acknowledged that, under the Massachusetts statute that regulates the appointment of new automobile dealers, Lee has no right to protest the appointment because Norwood is outside of Lee's statutory-defined "relevant market area" ("RMA"). In addition, the written agreement between Jaguar and Lee gives Jaguar the right to make the appointment.

9. Notwithstanding the clarity of the contract and the statute, an actual controversy has arisen between the parties concerning Jaguar's plan to add market representation in Norwood. In letters dated September 9, 2003, October 16, 2003, and November 11, 2003, as well as in communications that pre-dated the August 25, 2003, letter, Lee has asserted that the appointment of a dealer in Norwood is a violation of Lee's rights and has threatened to bring legal action to challenge the appointment.

10. Jaguar desires to proceed immediately with its plans to establish the Norwood dealership. However, Lee's stated claims and threats place such plans -- and the substantial expense to be incurred by Jaguar in implementing the plans -- at legal risk. Accordingly, Jaguar asks this Court to determine the legal relations between Jaguar and Lee with

respect to this issue, and declare that Jaguar is legally entitled to proceed with the establishment of a dealership in Norwood.

## FACTUAL BACKGROUND

### A.  Jaguar's Contract With Lee and the Assignment of Lee's Non-Exclusive Area of Primary Responsibility ("AOR")

11. Jaguar is the exclusive authorized distributor in the United States of the vehicles, parts and accessories ("Jaguar Products") manufactured and sold by Jaguar Cars Limited in the United Kingdom.

12. In its role as U.S. distributor, Jaguar, among other things, appoints and enters into written agreements with independent dealerships to act as authorized dealers of Jaguar Products to retail consumers.

13. Jaguar and Lee entered into a Dealer Agreement dated as of January 1, 1989 (the "Dealer Agreement"). The Dealer Agreement incorporated the Jaguar "Dealer Agreement Standard Provisions" (the "Standard Provisions") and any exhibits thereto. A copy of the Dealer Agreement, including the Standard Provisions, is annexed hereto as Exhibit A.

14. Pursuant to the Dealer Agreement, Jaguar appointed Lee "as a non-exclusive authorized dealer in Jaguar Products at the Dealership Facilities," which are defined as the facilities at 962 Worcester Road, Wellesley, Massachusetts 02482-3725.

15. Thus, the Dealer Agreement makes it clear that Lee has no contractual right to be the exclusive dealer of Jaguar Products in its area.

16. Nowhere in the Dealer Agreement does Jaguar agree not to add dealerships within any distance from, or area surrounding, Lee, and the Dealer Agreement contains no language restricting Jaguar's right to appoint other non-exclusive dealers.

17. Jaguar first established "areas of primary sales responsibility" ("AOR's") for Jaguar dealers in 1993. By letter dated October 22, 1993, Jaguar advised Lee that it had

defined AOR's in order to (i) measure the total volume of prestige luxury sales made in each area where Jaguar was represented; and (ii) enable both Jaguar and its dealers to better understand their sales potential and to compare Jaguar's performance against its competitors. The letter advised Lee that "AOR's are changeable, depending on such things as sales performance and the addition, deletion or relocation of dealers" and Jaguar reserved the right "to redefine AOR's in accordance with such reasonable criteria as we develop from time to time."

18. Consistent with the October 22 letter, an AOR is not an exclusive sales area: all Jaguar dealers have the right to compete with one another and to sell vehicles to consumers anywhere in the United States, including into another Jaguar dealer's AOR. Rather, an AOR is an area in close proximity to the dealer that is used primarily for measuring Jaguar's performance in the market in comparison to certain selected competing line-makes (the resulting percentage is commonly referred to as "market penetration"). The "market penetration" percentage for any given AOR is also compared to various other, related, benchmarks, such as regional and national average market penetration, to evaluate how well Jaguar -- and, by extension, its dealers -- are performing in the area.

19. Jaguar has, from time to time, communicated with Lee concerning its AOR. By letter dated January 28, 1999, for example, Jaguar advised Lee of a change to Lee's AOR definition based on the relocation of a Jaguar point in a contiguous market. The change included the removal of five zip codes and the addition of five new zip codes. In implementing the change, Jaguar expressly reminded Lee that "the AOR assigned to your dealership does not constitute an exclusive territory."

### B. The Massachusetts Statute

20. Massachusetts has enacted a statute, codified at Chapter 93B of the Massachusetts General Laws, which comprehensively regulates business practices between motor vehicle manufacturers, distributors, and dealers.

21. Among other things, that statute establishes a rule for when an existing dealer may, and when it may not, challenge the appointment of a new dealer of that same line-make as being without good cause, in bad faith, arbitrary, or unconscionable.

22. The statute gives an existing dealer the right to protest the grant of an additional franchise of the same line-make only when the new point is within the existing dealer's "relevant market area" ("RMA"). When a new point is within an existing dealer's RMA, the dealer has the right to demand a hearing to determine whether the appointment is without good cause, bad faith, arbitrary, or unconscionable.

23. Under the statute, Lee's RMA is the land mass encompassed in a circle with a radius of eight (8) miles from any boundary of Lee's dealership.

### C.  The Current, Actual Controversy Between Jaguar and Lee

24. Prior to August 25, 2003, Jaguar advised Lee of the possibility that Jaguar might appoint a dealer in Norwood, Massachusetts. In response to this information, Lee, among other things, threatened to sue Jaguar.

25. By letter dated August 25, 2003, Jaguar notified Lee that it had authorized the establishment of a Jaguar dealership at 449 Neponset Street, Norwood, Massachusetts 02062. A copy of the August 25th letter is annexed hereto as Exhibit B.

26. The August 25th letter further advised Lee that formal notification was not required by Massachusetts law, since "the proposed site is more than 8 miles from your location" and therefore "your dealership falls outside the relevant market area definition."

27. The Norwood location is, in fact, not within a circle with a radius of eight miles from any boundary of Lee's dealership. Accordingly, the Norwood location is not within Lee's RMA, and Lee has no right to protest under the Massachusetts statute.

28. Nevertheless, in letters dated September 9, 2003, October 16, 2003, and November 11, 2003, Lee has asserted that the appointment of a dealer in Norwood is a violation

5

of Lee's common-law rights, and has repeatedly threatened to bring legal action to challenge the appointment.

29. Jaguar desires to proceed immediately with its plans to establish the Norwood dealership. Proceeding with such establishment will require Jaguar to incur substantial expense.

30. In addition, in the absence of market representation in Norwood, Jaguar (i) has suffered and will continue to suffer the loss of a substantial number of sales of vehicles and related products, and (ii) will be hindered in its effort to improve customer convenience in the eastern Massachusetts area.

31. In sum, Jaguar will suffer substantial damages if it is not able promptly to establish the Norwood dealership.

32. By reason of the foregoing, there is an actual controversy between the parties, making declaratory relief appropriate under 28 U.S.C. § 2201.

## **CLAIM FOR RELIEF**

33. Jaguar repeats and realleges each and every allegation set forth in paragraphs 1 through 32 hereof as if fully set forth herein.

34. Under the Dealer Agreement between Jaguar and Lee, Jaguar has the right to add a dealership in Norwood.

35. Under Massachusetts statutory law, Jaguar is entitled to add a dealership in Norwood.

36. Jaguar's addition of a dealership in Norwood does not violate any contractual, statutory, or other right of Lee.

37. By reason of the foregoing, Jaguar should be granted a declaratory judgment that it has the right to add a dealership in Norwood, and that such action is not a violation of Lee's contractual, statutory or other rights.

WHEREFORE, Jaguar demands judgment pursuant to 28 U.S.C. § 2201, declaring that Jaguar has the right to add a dealership in Norwood, Massachusetts, and that Jaguar's addition of such representation does not violate any contractual, statutory or other right of Lee.

Dated: Boston, Massachusetts
December 17, 2003

KIRKPATRICK & LOCKHART LLP

By: _____
Sarah C. Kellogg (BBO# 637530)
75 State Street
Boston, Massachusetts 02109

KIRKPATRICK & LOCKHART
Carl J. Chiappa
John J. Sullivan
599 Lexington Avenue
New York, New York 10022-6030
(212) 536-3900

Attorneys for Jaguar Cars, a Division
of the Ford Motor Company

## CERTIFICATE OF SERVICE

I hereby certify that on this day a true copy of the above document was served upon the attorney of record for each party by mail/by hand.

Dated: 12/17/03  _____

7