UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| JAGUAR CARS, a Division of the Ford Motor Company,<br>　　　　Plaintiff,<br><br>v.<br><br>LEE IMPORTED CARS, INC.,<br>　　　　Defendant. | Civil Action No. 03CV12532RGS |

## DEFENDANT LEE IMPORTED CARS, INC.'S ANSWER, COUNTERCLAIMS, AND DEMAND FOR TRIAL BY JURY

Defendant Lee Imported Cars, Inc. ("Lee") hereby answers the allegations of the Complaint as follows:

### PARTIES

1. Lee is without sufficient knowledge to admit or deny the allegations contained in Paragraph 1 of the Complaint.

2. Lee admits it is a Massachusetts corporation with a principal place of business located at 962 Worcester Road, Wellesley, Massachusetts 02482, but denies the remaining allegations contained in Paragraph 2 of the Complaint.

### JURISDICTION AND VENUE

3. The allegations contained in Paragraph 3 of the Complaint state conclusions of law to which no response is required. However, to the extent a response is deemed required, Lee denies those allegations.

4.   Lee admits it has a principal place of business located in Norfolk County, Massachusetts. By way of further answer, the remaining allegations contained in Paragraph 4 of the Complaint state conclusions of law to which no response is required. However, to the extent a response is deemed required, Lee denies those allegations.

## NATURE OF ACTION

5.   The allegations contained in Paragraph 5 of the Complaint state conclusions of law to which no response is required. However, to the extent a response is deemed required, Lee denies those allegations.

6.   Lee admits it is, *inter alia*, a Jaguar dealer in Wellesley, Massachusetts.

7.   Lee states that the letter dated August 25, 2003 speaks for itself. To the extent a further answer is required, Lee denies the allegations contained in paragraph 7 of the Complaint.

8.   Lee denies the allegations contained in Paragraph 8 of the Complaint. By way of further answer, Lee states that any written agreements between Lee and Jaguar Cars ("Jaguar") speak for themselves.

9.   Lee states that the letters dated September 9, 2003, October 16, 2003, and November 11, 2003 speak for themselves. By way of further answer, the remaining allegations contained in paragraph 9 of the Complaint state conclusions of law to which no response is required. However, to the extent a response is deemed required, Lee denies those allegations.

10.  Lee is without sufficient knowledge to admit or deny the allegations contained in Paragraph 10 of the Complaint relating to Jaguar's "desires." By way of further answer, the remaining allegations contained in Paragraph 10 of the Complaint state conclusions of law to which no response is required. However, to the extent a response is deemed required, Lee denies those allegations.

## **FACTUAL BACKGROUND**

11.     Lee is without sufficient knowledge to admit or deny the allegations contained in Paragraph 11 of the Complaint.

12.     Lee is without sufficient knowledge to admit or deny the allegations contained in Paragraph 12 of the Complaint.

13.     Lee admits it entered into a Dealer Agreement dated January 1, 1989 with Jaguar Cars Inc. ("Dealer Agreement"), which incorporated the "Dealer Agreement Standard Provisions" and exhibits thereto, but denies the remaining allegations contained in Paragraph 13 of the Complaint. By way of further answer, Lee states that the Dealer Agreement speaks for itself.

14.     Lee states that the Dealer Agreement speaks for itself. To the extent a further answer is required, Lee denies the allegations contained in paragraph 14 of the Complaint.

15.     Lee states that the Dealer Agreement speaks for itself. To the extent a further answer is required, Lee denies the allegations contained in paragraph 15 of the Complaint.

16.     Lee states that the Dealer Agreement speaks for itself. To the extent a further answer is required, Lee denies the allegations contained in paragraph 16 of the Complaint.

17.     Lee states that the purported letter dated October 22, 1993 speaks for itself. To the extent a further answer is required, Lee denies the allegations contained in paragraph 17 of the Complaint.

18.     Lee states that the purported letter dated October 22, 1993 speaks for itself. To the extent a further answer is required, Lee denies the allegations contained in paragraph 18 of the Complaint.

19. Lee admits receiving correspondence from Jaguar regarding areas of primary sales responsibility, but states that the purported letter dated January 28, 1999 speaks for itself. To the extent a further answer is required, Lee denies the allegations contained in paragraph 19 of the Complaint.

20. The allegations contained in Paragraph 20 of the Complaint state conclusions of law to which no response is required. However, to the extent a response is deemed required, Lee denies those allegations.

21. The allegations contained in Paragraph 21 of the Complaint state conclusions of law to which no response is required. However, to the extent a response is deemed required, Lee denies those allegations.

22. The allegations contained in Paragraph 22 of the Complaint state conclusions of law to which no response is required. However, to the extent a response is deemed required, Lee denies those allegations.

23. The allegations contained in Paragraph 23 of the Complaint state conclusions of law to which no response is required. However, to the extent a response is deemed required, Lee denies those allegations.

24. Lee denies the allegations contained in Paragraph 24 of the Complaint.

25. Lee admits that a copy of a letter dated August 25, 2003 is attached to the Complaint as Exhibit "B." By way of further answer, Lee states that the letter dated August 25, 2003 speaks for itself. To the extent a further answer is required, Lee denies the remaining allegations contained in paragraph 25 of the Complaint.

26. Lee states that the letter dated August 25, 2003 speaks for itself. To the extent a further answer is required, Lee denies the allegations contained in paragraph 26 of the Complaint.

27. Lee denies the allegations contained in Paragraph 27 of the Complaint.

28. Lee admits that Jaguar's appointment of a dealer in Norwood, Massachusetts violates Lee's legal rights and will cause it to incur damages, but denies the remaining allegations contained in paragraph 28 of the Complaint.

29. Lee is without sufficient knowledge to admit or deny the allegations contained in Paragraph 29 of the Complaint.

30. Lee denies the allegations contained in Paragraph 30 of the Complaint.

31. Lee denies the allegations contained in Paragraph 31 of the Complaint.

32. The allegations contained in Paragraph 32 of the Complaint state conclusions of law to which no response is required. However, to the extent a response is deemed required, Lee denies those allegations.

## CLAIM FOR RELIEF

33. Lee repeats and realleges its answers to paragraphs 1-32 of the Complaint.

34. The allegations contained in Paragraph 34 of the Complaint state conclusions of law to which no response is required. However, to the extent a response is deemed required, Lee denies those allegations.

35. The allegations contained in Paragraph 35 of the Complaint state conclusions of law to which no response is required. However, to the extent a response is deemed required, Lee denies those allegations.

36. Lee denies the allegations contained in Paragraph 36 of the Complaint.

37. Lee denies the allegations contained in Paragraph 37 of the Complaint.

### FIRST AFFIRMATIVE DEFENSE

Plaintiff's Complaint fails to state a claim upon which relief can be granted.

### SECOND AFFIRMATIVE DEFENSE

Plaintiff's Complaint must be dismissed for lack of subject matter jurisdiction as no jurisdiction exists under 28 U.S.C. § 1332.

### THIRD AFFIRMATIVE DEFENSE

Plaintiff's Complaint must be dismissed as no justiciable actual case or controversy exists between the parties under 28 U.S.C. § 2201.

### FOURTH AFFIRMATIVE DEFENSE

Plaintiff's claims for declaratory relief are barred by the doctrine of estoppel.

### FIFTH AFFIRMATIVE DEFENSE

Plaintiff's claims for declaratory relief relating to M.G.L. c. 93B, *et seq.*, must be denied as the proposed dealership is within Lee's relevant market area.

### SIXTH AFFIRMATIVE DEFENSE

Plaintiff's claims for declaratory relief relating to M.G.L. c. 93B, *et seq.*, must be denied as the statutory scheme fails to properly address marketplace realities, lacks a rational basis, and is arbitrary.

### SEVENTH AFFIRMATIVE DEFENSE

Plaintiff's claims for declaratory relief relating to M.G.L. c. 93B, *et seq.*, must be denied as the statutory scheme enables Lee to establish that his relevant market area includes areas outside of the eight (8) mile radius set forth in M.G.L. c. 93B, § 1.

### EIGHTH AFFIRMATIVE DEFENSE

Plaintiff's claims for declaratory relief are improper and overly broad, as they seek to declare the prospective rights of the parties.

### LEE'S COUNTERCLAIMS AGAINST JAGUAR

### PARTIES

1. Plaintiff-in-Counterclaim/Defendant Lee Imported Cars, Inc. ("Lee") is a corporation organized under the laws of Massachusetts with a principal place of business at 962 Worcester Road, Wellesley, Massachusetts 02482.

2. Defendant-in-Counterclaim/Plaintiff Jaguar Cars, a Division of the Ford Motor Company is, upon information and belief, a corporation organized under the laws of Delaware with its principal place of business in Dearborn, Michigan. Upon information and belief, Jaguar is the successor-in-interest to Jaguar Cars Inc. (Jaguar Cars, a Division of the Ford Motor Company, and Jaguar Cars Inc. will be collectively referred to as "Jaguar").

### FACTS

3. Lee has been a Jaguar franchisee since 1974.

4. As a condition to entering into a new franchise agreement, Lee was required to execute a Performance Agreement dated November 23, 1987 ("Performance Agreement") for the construction of a new dealership and service facility.

5. The Performance Agreement required, *inter alia*, that Lee agree to budget and spend significant money on advertising and also agree to participate in Jaguar's National Co-Operative Advertising and Major Metro Programs.

6. Lee and Jaguar then entered into a new Dealer Agreement dated as of January 1, 1989, which incorporates the "Dealer Agreement Standard Provisions" and exhibits thereto (collectively, "Dealer Agreement").

7. Section 7.2 of the Dealer Agreement Standard Provisions provides:

> [Lee] acknowledges and agrees that [Jaguar] has appointed [Lee] as an authorized Dealer in Jaguar Products at the Dealership Facilities for the primary purpose of selling and servicing Jaguar Products in the market in which [Lee] is located (which, in the absence of a more specific definition, shall for the purposes of this Agreement mean the geographic area in which [Lee] is located and its immediate environs). While nothing in this Agreement limits [Lee] as to the geographic area into which, or the persons to whom, [Lee] may sell Jaguar Products, [Lee] acknowledges that it has assumed the obligation of selling and servicing Jaguar Products in its market.

8. Section 2.2 of the Dealer Agreement Standard Provisions also provides, in pertinent part, that "[Jaguar] will use its best efforts to assist [Lee] in the conduct of [Lee's] Jaguar Operations by providing a comprehensive range of support services . . . ."

9. In addition, Article 12 of the Dealer Agreement Standard Provisions requires Lee to participate in the National Cooperative Advertising and Major Metro Programs, which costs are to be funded jointly by Lee and Jaguar.

10. After consultation between Jaguar and Lee, Jaguar assigned to Lee its "areas of primary sales responsibility" ("AOR"). Lee's AOR initially included Norwood, Massachusetts 02062.

11. In accordance with the Dealer Agreement and Performance Agreement, Lee made a substantial, long-term investment in its property, plant and equipment, and began developing a customer base in its AOR to which it committed substantial resources.

12. In accordance with the Dealer Agreement, Lee also sought Jaguar's assistance and support in committing additional resources to marketing the Jaguar brand as Jaguar's expenditures significantly lagged behind that of other luxury car manufacturers.

13. In 1999, Jaguar began exploring the possibility of locating a new dealership to service Boston, Massachusetts and areas to its south.

14. Upon learning of Jaguar's plan to add another dealership in Lee's AOR, Lee again reiterated its position to Jaguar that it should commit additional resources to marketing and supporting the Jaguar brand rather than attempting to further penetrate the market by adding a new dealership in Lee's AOR.

15. After several discussions and correspondence, Jaguar informed Lee that it intended to locate a new dealership in Braintree, Massachusetts and had extended an offer to Daniel Quirk.

16. Although Braintree, Massachusetts was part of Lee's AOR, Lee ultimately informed Jaguar that it would not object to the placement of a new dealership in Braintree, Massachusetts.

17. Subsequently, by letter dated February 14, 2000, Jaguar informed Lee that it rescinded its offer to Daniel Quirk for a Braintree, Massachusetts location, but informed Lee that Braintree, Massachusetts was still being considered as an open point for a new dealership.

18. Based upon Jaguar's representations that Braintree, Massachusetts was still the open point for a new location, Lee continued to devote substantial resources to building its customer base in and around Norwood, Massachusetts.

19. As of April 2000 and August 2000, Norwood, Massachusetts was part of Lee's AOR and was an area which Lee considered to be an important part of its customer base.

20.     In January 2003, Lee received a Customer Footprint Map ("Footprint") breaking down customer sales and the average customer distance from Lee. The Footprint set forth that Lee's average customer distance was 19.44 miles and evidenced that a large percentage of Lee's customers were located in, or in close proximity to, Norwood, Massachusetts.

21.     In fact, not only did the Dealer Agreement and the parties' course of dealings and communications establish Norwood, Massachusetts as part of Lee's relevant market area, but M.G.L. c. 93B, *et seq.*, also afforded statutory protection to Lee by including Norwood, Massachusetts as part of Lee's relevant market area (based upon sales and the other statutory factors) throughout the relevant time period in which Braintree, Massachusetts was being considered an open point.

22.     In May 2003, Lee received notice that Jaguar intended to locate a new dealer in Hanover, Massachusetts, which is within Lee's AOR and also in close proximity to the Braintree, Massachusetts location for which Jaguar was soliciting new dealers.

23.     After receiving notification from Jaguar that it intended to locate a new dealership in Hanover, Massachusetts, Lee inquired as to Jaguar's plans for Braintree, Massachusetts and questioned whether Jaguar's ulterior motive was to relocate the planned Braintree, Massachusetts location further to the south so that Jaguar could try to place another dealership in closer proximity to Lee. Specifically, Lee questioned why Jaguar's representations throughout more than a two-year period were being retracted and expressed concern that Jaguar intended to place a new dealership in the Norwood/E. Walpole, Massachusetts area, which would significantly impact Lee's customer base.

24.     Jaguar subsequently opened a new dealership in Hanover, Massachusetts, which has been operating for approximately one year. As a result of the new dealership in Hanover,

Massachusetts, Jaguar reduced Lee's AOR and interfered with its customer base and/or potential customers.

25. In response to Lee's inquiries, Jaguar acknowledged that it was abandoning its efforts to place a new dealership in Braintree, Massachusetts, but failed to provide Lee with additional information requested by Lee concerning Jaguar's overall plans.

26. Moreover, by letter dated August 25, 2003, Jaguar informed Lee that it planned to locate yet another new dealer called Jaguar Land Rover Norwood at 449 Neponset Street, Norwood, Massachusetts (the "New Dealership").

27. The New Dealership is located, upon information and belief, approximately eight (8) miles from Lee's dealership.

28. Based upon Jaguar's own market penetration figures for year ending 1998, Lee's highest market penetration is for customers located approximately ten (10) miles from its dealership.

29. The New Dealership will have a significant adverse impact on Lee's enterprise value and asset base.

30. The New Dealership is located within Lee's relevant market area and will interfere with Lee's existing customer base or potential customers.

31. Jaguar's attempt to appoint the New Dealership is arbitrary, without good cause, in bad faith, and/or unconscionable.

32. Jaguar's letter dated August 25, 2003, also claims that M.G.L. c. 93B is inapplicable and, thus, fails to provide the requisite notice required by M.G.L. c. 93B, § 6.

## COUNT I - Breach of Contract

33. Lee hereby incorporates by reference paragraphs 1-32 of the Counterclaims as if set forth fully herein.

34. Lee and Jaguar entered into a valid and binding contract in the form of the Dealer Agreement.

35. Lee and Jaguar agreed to an AOR, which included Norwood, Massachusetts.

36. At all relevant times, Lee has been in full compliance with its obligations under the Dealer Agreement.

37. In accordance with the Dealer Agreement, Jaguar was obligated to assist Lee in building, marketing, and servicing its agreed upon AOR.

38. Jaguar has materially breached the Dealer Agreement by, *inter alia*, failing to assist Lee in further penetrating its AOR and by appointing the New Dealership in one of Lee's substantial customer bases.

39. As a result thereof, Lee has suffered and will continue to suffer actual damages.

## COUNT II - Breach of Implied Covenant of Good Faith and Fair Dealing

40. Lee hereby incorporates by reference paragraphs 1-39 of the Counterclaims as if set forth fully herein.

41. Lee and Jaguar entered into a valid and binding contract in the form of the Dealer Agreement.

42. Both Lee and Jaguar have an implied duty of good faith and fair dealing in fulfilling the obligations contained in the Dealer Agreement.

43. Jaguar has breached the implied covenant of good faith and fair dealing by, *inter alia*, failing to assist Lee in further penetrating its AOR, by repeatedly diminishing Lee's AOR,

and by trying to benefit from Lee's development of its customer base in the areas in which Jaguar is placing the New Dealership.

44. Jaguar actions in seeking to appoint the New Dealership, which will severely and adversely impact Lee's existing customer base, are not advanced in good faith.

45. As a result thereof, Lee has suffered and continues to suffer actual damages.

### COUNT III - Intentional Interference with Advantageous Business Relations

46. Lee hereby incorporates by reference paragraphs 1-45 of the Counterclaims as if set forth fully herein.

47. Lee has current and prospective business relationships with the customers in its AOR.

48. Jaguar knowingly and intentionally interfered with Lee's current and prospective business relationships with customers by, *inter alia*, proposing to open the New Dealership within Lee's AOR in Norwood, Massachusetts.

49. Jaguar's intentional interference is improper.

50. As a result thereof, Lee has suffered and continues to suffer actual damages.

### COUNT IV - Violation of M.G.L c. 93B

51. Lee hereby incorporates by reference paragraphs 1-51 of the Counterclaim as if set forth fully herein.

52. Lee and Jaguar are subject to M.G.L. c. 93B as they have entered into a Dealer Agreement involving the sale of motor vehicles.

53. Jaguar has violated M.G.L. c. 93B by, *inter alia*, proposing to open a new Jaguar dealership located within Lee's relevant market area, failing to provide proper notice of its intent to do so, and engaging in such acts that are arbitrary, in bad faith and unconscionable.

54. As a result thereof, Lee has suffered and continues to suffer actual damages.

WHEREFORE, Lee respectfully requests that the Court enter the following:

1. As to Count I, enter judgment in favor of Lee and against Jaguar for all of Lee's damages, plus costs, interest, and attorneys' fees;

2. As to Count II, enter judgment in favor of Lee and against Jaguar for all of Lee's damages, plus costs, interest, and attorneys' fees;

3. As to Count III, enter judgment in favor of Lee and against Jaguar for all of Lee's damages, plus costs, interest, and attorneys' fees;

4. As to Count IV, enter judgment in favor of Lee and against Jaguar for all of Lee's damages, plus costs, interest, and attorneys' fees; and

5. Grant such other and further relief as is just and proper.

## JURY DEMAND

**LEE HEREBY DEMANDS A TRIAL
BY JURY ON ALL CLAIMS SO TRIABLE**

Defendant/Plaintiff-in-Counterclaim,
LEE IMPORTED CARS, INC.,
By its attorneys,

*/s/ Jason A. Manekas*
Jason A. Manekas, Esquire, BBO No. 632073
Bernkopf, Goodman & Baseman LLP
125 Summer Street, Suite 1300
Boston, Massachusetts 02110
Telephone:   (617) 790-3000
Facsimile:   (617) 790-3300

Dated: January ____, 2004
#283196 v2/24440/4802

# BERNKOPF, GOODMAN & BASEMAN LLP

COUNSELLORS AT LAW
125 SUMMER STREET
BOSTON, MASSACHUSETTS 02110-1621
TELEPHONE (617) 790-3000
TELECOPIER (617) 790-3300

FILED
IN OFFICE
2004 JAN 21 P 4: 11
U.S. DISTRICT COURT
DISTRICT OF MASS

January 21, 2004

Jason A. Manekas
Direct Dial: (617) 790-3308
E-Mail: jmanekas@bgblaw.com

*VIA HAND DELIVERY*

Civil Clerk's Office
United States District Court
District of Massachusetts
1 Courthouse Way
Boston, MA  02210

> RE: Jaguar Cars, a Division of the Ford Motor Company v. Lee Imported Cars, Inc.
> United States District Court Civil Action No. 03CV12532RGS

Dear Sir/Madam:

Enclosed for filing in connection with the above matter, please find Defendant Lee Imported Cars, Inc.'s Answer, Counterclaims, and Demand for Trial by Jury (with attached Certificate of Service).

Kindly date-stamp the enclosed copy of the Answer and return it to me via our awaiting messenger. If you have any questions, please do not hesitate to call me.

Thank you for your assistance in this matter.

Very truly yours,

*[signature]*

Jason A. Manekas

Enclosures
cc: Sarah C. Kellogg, Esquire
JAM/mlb
#283262 v1/24440/4802