UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| JAGUAR CARS, a Division of the Ford Motor Company, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Civil Action No. 03CV12532RGS |
| LEE IMPORTED CARS, INC., | ) ) | |
| Defendant/Third-Party Plaintiff, | ) ) | |
| v. | ) ) ) | |
| JOHN DOE, | ) | |
| Being the Fictitious Name of Third-Party Defendant. | ) ) ) | |

## THIRD-PARTY COMPLAINT AND DEMAND FOR TRIAL BY JURY

### PARTIES

1.      Third-Party Plaintiff Lee Imported Cars, Inc. ("Lee") is a corporation organized under the laws of Massachusetts with a principal place of business at 962 Worcester Road, Wellesley, Massachusetts 02482.

2.      John Doe is the fictitious name of the Third-Party Defendant whose true name is not known to Lee. Third-Party has been designated "John Doe" in accordance with M.G.L. c. 223, §19. Upon information and belief, Third-Party Defendant plans to operate an automobile dealership called Jaguar Land Rover Norwood at 449 Neponset Street, Norwood, Massachusetts.

3.      Plaintiff/Defendant-in-Counterclaim Jaguar Cars, a Division of the Ford Motor Company is, upon information and belief, a corporation organized under the laws of Delaware with its principal place of business in Dearborn, Michigan. Upon information and belief, Jaguar

is the successor-in-interest to Jaguar Cars Inc. (Jaguar Cars, a Division of the Ford Motor

Company, and Jaguar Cars Inc. will be collectively referred to as "Jaguar").

## FACTS

4.      Lee has been a Jaguar franchisee since 1974.

5.      As a condition to entering into a new franchise agreement, Lee was required to

execute a Performance Agreement dated November 23, 1987 ("Performance Agreement") for the

construction of a new dealership and service facility.

6.      The Performance Agreement required, *inter alia*, that Lee agree to budget and

spend significant money on advertising and also agree to participate in Jaguar's National Co-

Operative Advertising and Major Metro Programs.

7.      Lee and Jaguar then entered into a new Dealer Agreement dated as of January 1,

1989, which incorporates the "Dealer Agreement Standard Provisions" and exhibits thereto

(collectively, "Dealer Agreement").

8.      Section 7.2 of the Dealer Agreement Standard Provisions provides:

> [Lee] acknowledges and agrees that [Jaguar] has appointed [Lee]
> as an authorized Dealer in Jaguar Products at the Dealership
> Facilities for the primary purpose of selling and servicing Jaguar
> Products in the market in which [Lee] is located (which, in the
> absence of a more specific definition, shall for the purposes of this
> Agreement mean the geographic area in which [Lee] is located and
> its immediate environs). While nothing in this Agreement limits
> [Lee] as to the geographic area into which, or the persons to whom,
> [Lee] may sell Jaguar Products, [Lee] acknowledges that it has
> assumed the obligation of selling and servicing Jaguar Products in
> its market.

9.      Section 2.2 of the Dealer Agreement Standard Provisions also provides, in

pertinent part, that "[Jaguar] will use its best efforts to assist [Lee] in the conduct of [Lee's]

Jaguar Operations by providing a comprehensive range of support services . . . ."

10.     In addition, Article 12 of the Dealer Agreement Standard Provisions requires Lee to participate in the National Cooperative Advertising and Major Metro Programs, which costs are to be funded jointly by Lee and Jaguar.

11.     After consultation between Jaguar and Lee, Jaguar assigned to Lee its "areas of primary sales responsibility" ("AOR"). Lee's AOR initially included Norwood, Massachusetts 02062.

12.     In accordance with the Dealer Agreement and Performance Agreement, Lee made a substantial, long-term investment in its property, plant and equipment, and began developing a customer base in its AOR to which it committed substantial resources.

13.     In accordance with the Dealer Agreement, Lee also sought Jaguar's assistance and support in committing additional resources to marketing the Jaguar brand as Jaguar's expenditures significantly lagged behind that of other luxury car manufacturers.

14.     In 1999, Jaguar began exploring the possibility of locating a new dealership to service Boston, Massachusetts and areas to its south.

15.     Upon learning of Jaguar's plan to add another dealership in Lee's AOR, Lee again reiterated its position to Jaguar that it should commit additional resources to marketing and supporting the Jaguar brand rather than attempting to further penetrate the market by adding a new dealership in Lee's AOR.

16.     After several discussions and correspondence, Jaguar informed Lee that it intended to locate a new dealership in Braintree, Massachusetts and had extended an offer to Daniel Quirk.

17.    Although Braintree, Massachusetts was part of Lee's AOR, Lee ultimately informed Jaguar that it would not object to the placement of a new dealership in Braintree, Massachusetts.

18.    Subsequently, by letter dated February 14, 2000, Jaguar informed Lee that it rescinded its offer to Daniel Quirk for a Braintree, Massachusetts location, but informed Lee that Braintree, Massachusetts was still being considered as an open point for a new dealership.

19.    Based upon Jaguar's representations that Braintree, Massachusetts was still the open point for a new location, Lee continued to devote substantial resources to building its customer base in and around Norwood, Massachusetts.

20.    As of April 2000 and August 2000, Norwood, Massachusetts was part of Lee's AOR and was an area which Lee considered to be an important part of its customer base.

21.    In January 2003, Lee received a Customer Footprint Map ("Footprint") breaking down customer sales and the average customer distance from Lee. The Footprint set forth that Lee's average customer distance was 19.44 miles and evidenced that a large percentage of Lee's customers were located in, or in close proximity to, Norwood, Massachusetts.

22.    In fact, not only did the Dealer Agreement and the parties' course of dealings and communications establish Norwood, Massachusetts as part of Lee's relevant market area, but M.G.L. c. 93B, *et seq.*, also afforded statutory protection to Lee by including Norwood, Massachusetts as part of Lee's relevant market area (based upon sales and the other statutory factors) throughout the relevant time period in which Braintree, Massachusetts was being considered an open point.

23.    In May 2003, Lee received notice that Jaguar intended to locate a new dealer in Hanover, Massachusetts, which is within Lee's AOR and also in close proximity to the Braintree, Massachusetts location for which Jaguar was soliciting new dealers.

24.    After receiving notification from Jaguar that it intended to locate a new dealership in Hanover, Massachusetts, Lee inquired as to Jaguar's plans for Braintree, Massachusetts and questioned whether Jaguar's ulterior motive was to relocate the planned Braintree, Massachusetts location further to the south so that Jaguar could try to place another dealership in closer proximity to Lee.  Specifically, Lee questioned why Jaguar's representations throughout more than a two-year period were being retracted and expressed concern that Jaguar intended to place a new dealership in the Norwood/E. Walpole, Massachusetts area, which would significantly impact Lee's customer base.

25.    Jaguar subsequently opened a new dealership in Hanover, Massachusetts, which has been operating for approximately one year.  As a result of the new dealership in Hanover, Massachusetts, Jaguar reduced Lee's AOR and interfered with its customer base and/or potential customers.

26.    In response to Lee's inquiries, Jaguar acknowledged that it was abandoning its efforts to place a new dealership in Braintree, Massachusetts, but failed to provide Lee with additional information requested by Lee concerning Jaguar's overall plans.

27.    Moreover, by letter dated August 25, 2003, Jaguar informed Lee that it planned to locate yet another new dealer called Jaguar Land Rover Norwood at 449 Neponset Street, Norwood, Massachusetts (the "New Dealership").

28.    The New Dealership is to be operated by Third-Party Defendant.

29.     The New Dealership is located, upon information and belief, approximately eight (8) miles from Lee's dealership.

30.     Based upon Jaguar's market penetration figures for year ending 1998, Lee's highest market penetration is for customers located approximately ten (10) miles from its dealership.

31.     Upon information and belief, Third-Party Defendant knew of the relationship between Lee and Jaguar.

32.     Upon information and belief, Third-Party Defendant knew that Norwood, Massachusetts was part of Lee's AOR and that Lee derived substantial sales from that relevant market area.

33.     Upon information and belief, Third-Party Defendant intentionally pursued the New Dealership in an effort to capitalize on the advertising, good will, and customer base created by Lee in Norwood, Massachusetts and the surrounding areas.

34.     The New Dealership will have a significant adverse impact on Lee's enterprise value and asset base.

35.     The New Dealership is located within Lee's relevant market area and will interfere with Lee's existing customer base or potential customers.

36.     Jaguar's attempt to appoint the New Dealership to Third-Party Defendant is arbitrary, without good cause, in bad faith, and/or unconscionable.

### COUNT I - Intentional Interference with Advantageous Business Relations

37.     Lee hereby incorporates by reference paragraphs 1-36 of the Third-Party Complaint as if set forth fully herein.

38.    Lee has current and prospective business relationships with the customers in its

AOR, including Norwood, Massachusetts.

39.    Upon information and belief, Third-Party Defendant knew of Lee's business and

contractual relationships.

40.    Third-Party Defendant is knowingly and intentionally interfering with Lee's

current and prospective business relationships with customers by, *inter alia*, proposing to open

the New Dealership within Lee's AOR in Norwood, Massachusetts.

41.    Third-Party Defendant's intentional interference is improper.

42.    As a result thereof, Lee has suffered and continues to suffer damages.

### COUNT II - Violation of M.G.L. c. 93B

43.    Lee hereby incorporates by reference paragraphs 1-42 of the Third-Party

Complaint as if set forth fully herein.

44.    Lee and Jaguar are subject to M.G.L. c. 93B as they have entered into a Dealer

Agreement involving the sale of motor vehicles.

45.    By virtue of M.G.L. c. 93B, §6(f)(2), Third-Party Defendant is also subject to

M.G.L. c. 93B as Third-Party Defendant seeks to operate the New Dealership in Lee's relevant

market area.

46.    Jaguar and Third-Party Defendant have violated M.G.L. c. 93B by, *inter alia*,

proposing to open a new Jaguar dealership located within Lee's relevant market area, failing to

provide proper notice of their intent to do so, and engaging in such acts that are in bad faith and

unconscionable.

47.    As a result thereof, Lee has suffered and continues to suffer damages.

WHEREFORE, Lee respectfully requests that the Court enter the following:

1.  As to Count I, enter judgment in favor of Lee and against Third-Party Defendant for all of Lee's damages, plus costs, interest, and attorneys' fees;

2.  As to Count II, enter judgment in favor of Lee and against Third-Party Defendant for all of Lee's damages, plus costs, interest, and attorneys' fees; and

3.  Grant such other and further relief as is just and proper.

## JURY DEMAND

**LEE HEREBY DEMANDS A TRIAL
BY JURY ON ALL CLAIMS SO TRIABLE**

> Third-Party Plaintiff,
> LEE IMPORTED CARS, INC.,
> By its attorneys,
>
>
> Jason A. Manekas, Esquire, BBO No. 632073
> Bernkopf, Goodman & Baseman LLP
> 125 Summer Street, Suite 1300
> Boston, Massachusetts 02110
> Telephone:    (617) 790-3000
> Facsimile:    (617) 790-3300

Dated: January 29, 2004
#283795 v1/24440/4802

- 8 -

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| JAGUAR CARS, a Division of the Ford Motor Company, )<br>              Plaintiff, )<br> )<br>v. )<br> )<br>LEE IMPORTED CARS, INC., )<br>              Defendant. ) | Civil Action No. 03CV12532RGS |

## **CERTIFICATE OF SERVICE**

I, Jason A. Manekas, hereby certify that a copy of the Third-Party Complaint and

Demand for Trial by Jury was served upon Sarah C. Kellogg, Esquire, Kirkpatrick & Lockhart

LLP, 75 State Street, Boston, Massachusetts 02109 via first class, postage prepaid, mail on this

29th day of January 2004.

Signed under the pains and penalties of perjury this 29th day of January 2004.

Jason A. Manekas

#283979 v1/24440/4802