UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

RECEIVED
Clerk's Office
USDC, Mass.
Date 4-5-04
By _____
Deputy Clerk

|  |  |
|---|---|
| JAGUAR CARS, a Division of the Ford Motor Company,<br>      Plaintiff,<br><br>v.<br><br>LEE IMPORTED CARS, INC.,<br>      Defendant/Third-Party Plaintiff,<br><br>v.<br><br>JOHN DOE,<br>      Being the Fictitious Name of<br>      Third-Party Defendant. | Civil Action No. 03CV12532RGS |

## DEFENDANT LEE IMPORTED CARS, INC.'S OPPOSITION TO JAGUAR'S MOTION FOR (1) SUMMARY JUDGMENT ON ITS DECLARATORY JUDGMENT CLAIM AND (2) PARTIAL DISMISSAL OF DEFENDANT'S COUNTERCLAIMS

### I. Introduction

The instant action involves a dispute between Plaintiff Jaguar Cars ("Jaguar") and one of

its long-standing franchisees, Defendant Lee Imported Cars, Inc. ("Lee"), the focal point of

which is Jaguar's attempt to seize the majority of Lee's primary area of responsibility ("AOR").

After more than twenty-five years of cultivating its assigned AOR, including constructing a new

facility at Jaguar's insistence and spending substantial monies on marketing programs to specific

communities, Jaguar cut Lee's AOR virtually in half by appointing a new dealership in Hanover,

Massachusetts. Thereafter, Jaguar sought to further reduce Lee's AOR by appointing another

new dealership in Braintree, Massachusetts. Finally, in light of a recent legislative change to

M.G.L. c. 93B, Jaguar now seeks to place another new dealership on Lee's doorstep in Norwood,

Massachusetts (the "Norwood Dealership"). The Norwood Dealership is located in an area that, prior to the legislative change, was clearly within Lee's statutorily protected relevant market area and, in any event, was part of Lee's market as set forth in the franchise agreement.[1] The Norwood Dealership will substantially impair Lee's value and asset base, and will interfere with Lee's existing customer base and potential customers.

Realizing that Lee's legal rights would be greatly impacted by the Norwood Dealership, Jaguar precipitously filed the instant action seeking broad declarations that: (1) it has the right to establish the Norwood Dealership; and (2) that the establishment of the Norwood Dealership does not violate any contractual, statutory or other rights of Lee. Not only did Jaguar file the instant action, but, prior to any discovery being conducted, Jaguar now seeks summary judgment declaring that "it may add a Jaguar dealership in Norwood, Massachusetts without incurring liability to [Lee]" and seeking a dismissal of all of Lee's counterclaims to the extent they seek relief by reason of Jaguar's establishment of the Norwood Dealership. Notwithstanding Jaguar's attempt to shield itself from discovery into its actions, Jaguar's motion must fail as the establishment of the New Dealership will affect Lee's statutory, contractual, and common-law rights. More specifically, there exist genuine issues of material fact relating to, *inter alia*, the timing of the new dealer agreement, the distance between the nearest boundaries of the two dealerships, and the definition of the term "market" as set forth in Lee's franchise agreement, as well as constitutional issues relating to the retroactive application of recent statutory amendments

---

[1] As discussed *infra*, the Norwood Dealership may still be within Lee's relevant market area depending on the timing of Jaguar's new operating agreement and an expert opinion regarding the distance between the dealerships' closest boundaries.

to Lee, and legal issues regarding Lee's affirmative defenses.[2] Accordingly, Jaguar's motion for summary judgment and motion to partially dismiss counterclaims should be denied.

## II. Facts[3]

1.    Lee, with a principal place of business at 962 Worcester Road, Wellesley, Massachusetts 02482, has been a franchisee of Jaguar Cars Inc. since 1974. Lee Aff., ¶'s 1-2.

2.    In or about 1987, after Lee served as a Jaguar franchisee for approximately thirteen (13) years, Jaguar threatened to terminate the franchise agreement unless Lee agreed to construct a new dealership and service facility. Given the respective bargaining power of the two entities, and out of fear of losing the Jaguar franchise, Lee agreed to spend in excess of $6 million on a build-out, so that it could continue to operate the Jaguar franchise in its assigned area of responsibility ("AOR"). Lee Aff., ¶3.

3.    As a condition to entering into the new franchise agreement, Lee was required to execute a Performance Agreement dated November 23, 1987 ("Performance Agreement") for the construction of the new building and service facility. Jaguar represented to Lee that it could keep its franchise and assigned AOR if it agreed to build a new facility. Lee Aff., ¶4.

4.    The Performance Agreement required, *inter alia*, that Lee agree to budget and spend significant money on advertising and also agree to participate in Jaguar's National Co-Operative Advertising and Major Metro Programs. The Performance Agreement also required that Lee not add any additional lines or makes of automobiles. Lee Aff., ¶5.

---

[2] The entry of summary judgment is also improper as Lee has not yet been afforded an opportunity to conduct discovery.
[3] The facts set forth herein are taken from the Affidavit of Christopher J. Lee ("Lee Aff."), which is submitted herewith and incorporated herein by reference.

- 3 -

5.    Lee and Jaguar then entered into a new Dealer Agreement dated as of January 1,

1989, which incorporates the "Dealer Agreement Standard Provisions" and exhibits thereto

(collectively, "Dealer Agreement"). Lee Aff., ¶6.

6.    Although the Dealer Agreement provides that Lee is a "non-exclusive authorized

dealer," Section 7.2 of the Dealer Agreement Standard Provisions further provides:

> [Lee] acknowledges and agrees that [Jaguar] has appointed [Lee]
> as an authorized Dealer in Jaguar Products at the Dealership
> Facilities for **the primary purpose of selling and servicing**
> **Jaguar Products in the market in which [Lee] is located**
> **(which, in the absence of a more specific definition, shall for**
> **the purposes of this Agreement mean the geographic area in**
> **which [Lee] is located and its immediate environs)**. While
> nothing in this Agreement limits [Lee] as to the geographic area
> into which, or the persons to whom, [Lee] may sell Jaguar
> Products, [Lee] acknowledges that it has assumed the obligation of
> selling and servicing Jaguar Products in its market (emphasis
> added).

Lee Aff., ¶7.

7.    The Dealer Agreement also provides that it "is to be governed by, and construed

in accordance with, the laws of the state in which [Lee] is located," i.e., Massachusetts. Lee

Aff., ¶8.

8.    Based upon Lee's fifteen year history as a Jaguar franchisee prior to the time it

executed the new Dealer Agreement, Lee understood its market as provided in the Dealer

Agreement to be the AOR previously assigned to it, which consisted of not only Norwood,

Massachusetts, but the vast majority of Massachusetts located south of Boston. AOR maps

dating back to 1982 provided by Jaguar to Lee confirm the specific territories assigned to Lee,

and include a large majority of Massachusetts south of Boston, including, but not limited to,

Norwood, Massachusetts. Jaguar also represented that Lee would be able to keep its territory.

Lee Aff., ¶9.

- 4 -

9.      At the time Lee entered into the Dealer Agreement, its understanding was that its

"market" and "immediate environs" included the AOR previously assigned to it and which it had

been cultivating for approximately fifteen (15) years. Lee would not have committed in excess

of $6 million to build a new facility if it did not have the benefit of the previously assigned

market. Lee Aff., ¶10.

10.     In addition, based upon the mandate of M.G.L. c. 93B, *et seq.*, which was enacted

to protect automobile dealers such as Lee from the unequal bargaining power between dealers

and manufacturers/distributors such as Jaguar and which was in effect from 1970 through Lee's

execution of the Dealer Agreement, Lee understood that, at a minimum, his "market" included

the statutorily defined relevant market area. The statutorily defined relevant market area

included the geographic region wherein two-thirds of Lee's retail sales or retail service sales

occurred notwithstanding what its assigned AOR was. Based upon Lee's fifteen (15) year

history as a Jaguar franchisee, Norwood, Massachusetts clearly fell within its relevant market

area as construed by Massachusetts law at the time the Dealer Agreement was executed. Lee

Aff., ¶11.

11.     At the time Lee executed the new Dealer Agreement in 1989, and through present

day, Norwood, Massachusetts is clearly within the geographic area within which two-thirds of

Lee's retail sales and retail service sales occur. At the time Lee executed the Dealer Agreement

in 1989, Norwood, Massachusetts 02062 was not only part of its AOR, but was well within Lee's

statutorily protected area. Lee Aff., ¶12.

12.     In accordance with the Dealer Agreement and Performance Agreement, Lee made

a substantial, long-term investment in its property, plant and equipment, and continued

developing a customer base in its AOR to which it committed substantial resources. Lee also

sought Jaguar's assistance and support in committing additional resources to marketing the

Jaguar brand as Jaguar's expenditures significantly lagged behind that of other luxury car

manufacturers. Lee Aff., ¶'s 14-15.

13.     By letter dated October 22, 1993, Jaguar attempted to unilaterally redefine Lee's

AOR and to alter the territory which Lee believed it acquired by virtue of the Dealer Agreement

and prior course of dealing with Jaguar.  The letter included the self-serving language that:

> Obviously, AOR's are changeable, depending on such things as
> sales performance and the addition, deletion or relocation of
> dealers.  In addition, we, of course, reserve the right to redefine
> AOR's in accordance with such reasonable criteria as we develop
> from time to time.

Lee never accepted Jaguar's attempt to unilaterally redefine the parties' agreement.  Lee Aff.,

¶16.

14.     In 1999, Jaguar apparently began exploring the possibility of locating a new

dealership to service Boston, Massachusetts and areas to its south.  Lee Aff., ¶17.

15.     Upon learning of Jaguar's plan to add a dealership within Lee's AOR, Lee voiced

concern that Jaguar was intruding upon Lee's bargained for AOR and again reiterated its position

to Jaguar that it should commit additional resources to marketing and supporting the Jaguar

brand rather than attempting to further penetrate the market by adding a new dealership in Lee's

AOR.  Lee Aff., ¶18.

16.     After several discussions and correspondence, Jaguar informed Lee that it

intended to locate a new dealership in Braintree, Massachusetts and had extended an offer to

Daniel Quirk.  Lee Aff., ¶19.

17.    Although Braintree, Massachusetts was part of Lee's AOR, Lee ultimately informed Jaguar that it would not object to the placement of a new dealership in Braintree, Massachusetts, primarily as Lee did not desire a legal battle with Jaguar. Lee Aff., ¶20.

18.    Subsequently, by letter dated February 14, 2000, Jaguar informed Lee that it rescinded its offer to Daniel Quirk for a Braintree, Massachusetts location, but informed Lee that Braintree, Massachusetts was still being considered as an open point for a new dealership. Lee Aff., ¶21.

19.    Based upon Jaguar's representations that Braintree, Massachusetts was still the open point for a new location, Lee continued to devote substantial resources to building its customer base in and around Norwood, Massachusetts, which was located closer to its dealership. Lee Aff., ¶22.

20.    In January 2003, Lee received a Customer Footprint Map ("Footprint") breaking down customer sales and the average customer distance from Lee. The Footprint set forth that Lee's average customer distance was 19.44 miles and evidenced that a large percentage of Lee's customers were located in, or in close proximity to, Norwood, Massachusetts. Lee Aff., ¶23.

21.    In May 2003, Lee received notice that Jaguar intended to locate a new dealer in Hanover, Massachusetts, which was also within Lee's AOR and also in close proximity to the Braintree, Massachusetts location for which Jaguar was soliciting new dealers. Lee Aff., ¶24.

22.    After receiving notification from Jaguar that it intended to locate a new dealership in Hanover, Massachusetts, Lee inquired as to Jaguar's plans for Braintree, Massachusetts and questioned whether Jaguar's ulterior motive was to relocate the planned Braintree, Massachusetts location further to the south so that Jaguar could try to place another dealership in closer proximity to Lee. Specifically, Lee questioned why Jaguar's representations throughout more

- 7 -

than a two-year period were being retracted and expressed concern that Jaguar intended to place

a new dealership in the Norwood/E. Walpole, Massachusetts area, which would significantly

impact Lee's customer base and violate the parties' agreement.  Jaguar failed to provide any

information to Lee and failed to discuss the "reasonable criteria" set forth in Jaguar's own self-

serving letter dated October 22, 1993.  Lee Aff., ¶25.

23.    Jaguar subsequently opened a new dealership in Hanover, Massachusetts, which

has been operating for approximately one year.  As a result of the new dealership in Hanover,

Massachusetts, Jaguar significantly reduced Lee's AOR and interfered with its customer base

and/or potential customers, which are shown on the attached maps.  Lee's initial estimates are

that the Hanover dealership pilfers approximately 100 vehicle sales per year away from Lee.  Lee

Aff., ¶26.

24.    By letter dated August 25, 2003, Jaguar informed Lee that it planned to locate yet

another new dealer called Jaguar Land Rover Norwood at 449 Neponset Street, Norwood,

Massachusetts (the "Norwood Dealership").  Notwithstanding Lee's requests, Jaguar has neither

provided nor disclosed the operating agreement.  Lee Aff., ¶28.

### III. Argument

**A.**    **Issues to Be Addressed By Virtue of Jaguar's Motion for Summary Judgment and to Partially Dismiss Counterclaims.**

By virtue of its Motion, Jaguar raises broad issues that should properly be classified as

follows:

(1)    Does Lee fall within M.G.L. c. 93B's statutorily defined relevant market area?[4]

(2)    If Lee does not fall within M.G.L. c. 93B's statutorily defined relevant market area, should the legislative change made in 2002 that effectively reduces Lee's

---

[4]  Although Chapter 93B is broad in scope, Jaguar has focused exclusively on relevant market area.

substantive rights as they existed at the time it entered into the Dealer Agreement
be applied to Lee?

(3)    Notwithstanding the resolution of the issues surrounding the application of
M.G.L. c. 93B, what was Lee's bargained for market at the time it entered into the
Dealer Agreement in 1989?

(4)    If the Court determines that Lee is not within M.G.L. c. 93B's statutorily defined
market area, that the statutory change that reduced Lee's substantive rights can be
applied to Lee, and that Lee's bargained for market at the time it entered into the
Dealer Agreement did not include Norwood, Massachusetts, what is the proper
relief to be afforded to Jaguar?

As set forth below, Lee believes that an issue of fact exists as to what version of Chapter 93B

applies and whether Norwood, Massachusetts falls within the relevant market area as currently

defined by M.G.L. c. 93B, that M.G.L. c. 93B cannot be used to reduce the substantive rights

Lee had when it entered into the Dealer Agreement, that, in any event, Norwood, Massachusetts

was part of Lee's bargained for market at the time it entered into the Dealer Agreement, and that

even assuming, *arguendo*, that the Court rules against Lee on the above issues - a proposition

which is expressly disputed - the relief sought by Jaguar is overbroad and should be limited to

specific rulings of law on the above questions.[5]

**B.    Genuine Issues of Material Fact Exist as to Whether Lee Falls Within the
Relevant Market Area as Defined by M.G.L. c. 93B**

In order to properly understand the dispute surrounding relevant market area, and the

issues set forth below, a brief overview of the history of Chapter 93B is required. In 1970,

Massachusetts enacted General Laws chapter 93B, commonly referred to as the Dealer's Bill of

Rights:

in recognition of the potentially oppressive power of automobile
manufacturers and distributors in relation to their affiliated dealers.

---

[5] Lee asserts that it would be improper to issue a broad declaration that the Norwood Dealership does not affect any
contractual, statutory, or other rights Lee may have. Rather, any rulings should be limited to specific issues and
should not affect other rights, including prospective rights, that the parties may have.

*Beard Motors, Inc. v. Toyota Motor Distributors, Inc.*, 395 Mass. 428, 432, 480 N.E.2d 303, 306

(1985). Among other things, Chapter 93B made it unlawful for a manufacturer or distributor to

arbitrarily grant or enter into a franchise agreement with an additional franchisee within the

relevant market area of an existing franchisee. M.G.L. c. 93B, §4(3)(c) (as added by St. 1970, c.

814, §1 and amended by St. 1977, c. 717, §2). From 1970 to 1977, during which time Lee's

franchise was first established, the term "relevant market area" was defined "exclusively by

equitable principles." St. 1970, c. 814, §1. As a result of legislative changes, from 1977 to

September 1, 2002, the term "relevant market area" was defined as:

> the more narrowly defined and circumscribed geographical area
> immediately surrounding its existing dealer location within which
> it obtained, during the period of time the dealership business has
> been operated from said location or the three-year period
> immediately preceding the date of said notice of intent to grant or
> enter into an additional franchise or selling agreement, whichever
> is the lesser, **at least two-thirds of (i) its retail sales of new
> motor vehicles** of said line make or (ii) its retail service sales,
> regardless of whether its franchise or selling agreement delineates
> or establishes a specific area of responsibility or whether, by
> custom or usage, a specific area of responsibility has been
> established or another motor vehicle dealer with a franchise or
> selling agreement covering the same line makes has a place of
> business in such market area (emphasis added).

The above definition was in place in 1989 when Lee entered into the Dealer Agreement after

serving as Jaguar's franchisee for approximately fifteen (15) years.

In September 2002, by virtue of St. 2002, c. 222, §3, the definition of "relevant market

area" was changed to:

> (1) If all boundaries of a dealership are located in the counties of
> Bristol, Essex, Hampden, Middlesex, Norfolk, Plymouth or
> Suffolk, are 8 or more miles from the border of the counties of
> Barnstable, Berkshire, Dukes, Franklin, Hampshire, Nantucket and
> Worcester, then the geographic area shall be the entire land mass
> encompassed in a circle with a radius of 8 miles from any
> boundary of the dealership.

- 10 -

M.G.L. c. 93B, § 1 (amended 2002) (the "2002 amendments"). Section 1 further clarifies that "a radius measurement shall be drawn from the closest boundary of the existing dealership to the closest boundary of the site for the proposed dealership or relocation." M.G.L. c. 93B, § 1(6); *see also American Honda Motor Co., Inc. v. Richard Lundgren, Inc.*, 314 F.3d 17, 22 (2002) (stating boundary can be used in measuring relevant market area under 2002 amendment).

By virtue of its Motion, Jaguar seeks a broad declaration that M.G.L. c. 93B does not afford any protection to Lee based upon the sole allegation that Lee falls outside the statutorily-defined "relevant market area."[6] Before analyzing relevant market area, however, we must first determine which version of the statute applies to the instant dispute. The 2002 amendments do not apply to any dispute for which notice was to be given [pursuant to G.L. c. 93B, § 4(3)(l) as it existed prior to the 2002 amendments (the "Notice Provision")] before September 1, 2002. St. 2002, c. 222, § 5. The Notice Provision requires Jaguar to provide Lee notice of its intent to enter into an operating agreement with the Norwood Dealership "at least sixty days prior to granting such franchise or entering into such agreement" if Lee is within a "twenty mile radius of the location where the business of the proposed franchise will be located."[7] G.L. c. 93B, § 4(3)(l) as enacted by St. 1977, c. 717, § 3. In footnote 1 of Jaguar's Memorandum of Law, it makes the conclusory allegation that the eight-mile radius set forth in the 2002 amendments should apply as it did not enter into an agreement with the Norwood Dealership within sixty (60) days of September 1, 2002. However, Lee has not been permitted to conduct any discovery as to the timing of Jaguar's agreement with the Norwood Dealership nor have its requests to be

---

[6] Count IV of Lee's counterclaims, which alleges a violation of M.G.L. c. 93B, would stand or fall on the same grounds. As Jaguar's argument is limited exclusively to whether Lee falls within the relevant market area, Lee need not examine other aspects of the statutory scheme.

[7] Jaguar's own pleadings argue that Lee is located 10.5 miles from the Norwood Dealership. Declaration of George Delaney ("Delaney Declaration"), Exhibit 3.

- 11 -

provided the applicable documentation produced any such documentation. In fact, from February 2000 to August 2003, Jaguar continually represented to Lee that Braintree, Massachusetts was going to be the new point and refused to disclose any underlying details to Lee. Accordingly, a genuine issue of fact exists as to what version of Chapter 93B applies to the instant dispute, which requires that Lee be permitted to conduct discovery into the underlying process.

Even assuming, *arguendo*, that the 2002 amendments apply, and thus the eight (8) mile radius defines relevant market area, the only evidence put forth by Jaguar is a self-serving "Dealer Distance Map," which purports to draw a line between all Massachusetts Jaguar dealers with a corresponding distance number. The Dealer Distance Map on which Jaguar relies was prepared by Urban Science Applications, Inc. ("USAI"), a self-defined consultant to the automotive industry that has worked with Jaguar since at least 1982. *See* Delaney Declaration, § 4; Lee Aff., Exhibit "A." The Dealer Distance Map is fundamentally flawed, however, as it fails to use the closest boundary lines of the two sites as required by M.G.L. c. 93B, § 1(6) (amended 2002). In fact, the Dealer Distance Map fails to list USAI's methodology (except for a reference to a street address in an e-mail) and omits to detail how it arrived at its calculation. Since USAI's purported distance does <u>not</u> use the closest boundaries between the two properties, and fails to set forth any methodology as to how it arrived at its distance and from which points it was measured, it is of no evidentiary value and cannot form the basis for summary judgment.[8]

At this stage, Lee has not been provided the opportunity to conduct discovery, including, without limitation, the ability to question USAI on its methodology. Since Lee has not yet

---

[8] Lee has filed herewith a Motion to Strike certain statements set forth in the Delaney Declaration, including USAI's purported distance figure.

obtained an expert report regarding the distance between the two closest boundaries, the entry of summary judgment at this time is premature.

C.    **The Legislative Change to M.G.L. c. 93B, effective September 1, 2002, Should Not Diminish Lee's Substantive Rights Existing at the Time the Franchise Agreement Was Executed.**

Both prior to and at the time of the execution of the Dealer Agreement, Norwood, Massachusetts fell within the geographic region wherein two-thirds of Lee's retail sales and/or retail service sales occurred, thus creating substantive rights for Lee.[9] According to the terms of the Dealer Agreement, it is to be construed in accordance with Massachusetts law, which provided a relevant market area that included Norwood, Massachusetts at the time the Dealer Agreement was executed and would still include Norwood, Massachusetts. To the extent the 2002 amendments to Chapter 93B apply to the instant dispute, the 2002 amendments effectively reduce Lee's substantive rights, thus violating Lee's due process rights under the Fourteenth Amendment to the United States Constitution and Article 10 of the Massachusetts Declaration of Rights.

In *American Mfrs. Mut. Ins. Co. v. Commissioner of Ins.*, 374 Mass. 181, 191, 372 N.E.2d 520, 526 (1978), the Court established a three-prong test to determine the reasonableness of a retroactive statute: the nature of the public interest, the nature of the rights affected retroactively, and the extent or scope of the statutory effect or impact. Retroactive statutes "which, on a balancing of opposing considerations, are deemed to be unreasonable, are held to be unconstitutional." *Pielech v. Massasoit Geryhound, Inc.*, 441 Mass. 188, 192, 804 N.E.2d 894, 898 (2004), quoting *Leibovich v. Antonellis*, 410 Mass. 568, 577, 574 N.E.2d 978, 984 (1991). As the 2002 amendments potentially eradicate Lee's substantive rights, by allegedly permitting a

---

[9] This issue has not been contested by Jaguar in its motion and it is therefore assumed for purposes of this motion.

- 13 -

competing dealer to be placed in Norwood, Massachusetts, the 2002 amendments cannot be

applied retroactively to Lee without violating his due process rights under both the United States

and Massachusetts Constitution. *See Ricky Smith Pontiac, Inc. v. Subaru of New England, Inc.*,

14 Mass. App. Ct. 396, 414, 440 N.E.2d 29, 41-42 (1982) (opining a new definition of relevant

market area was substantive in nature).

The Massachusetts Supreme Judicial Court has already determined that prior versions of

Chapter 93B did not apply to contracts that antedate the statute. *See, e.g., Foreign Auto Import,*

*Inc. v. Renault Northeast, Inc.*, 367 Mass. 464, 326 N.E.2d 888 (1975); *Hein-Werner Corp. v.*

*Jackson Indus., Inc.*, 364 Mass. 523, 525, 306 N.E.2d 440, 442-443 (1974); *Tober Foreign*

*Motors, Inc. v. Reiter Oldsmobile, Inc.*, 376 Mass. 313, 322 n. 10, 381 N.E.2d 908, 913 n. 10

(1978) (citing *Hein-Werner Corp.*). In *Hein-Werner Corp.*, 364 Mass. at 525, 306 N.E.2d at 442,

the Court noted that Chapter 93B affected substantive rights and refused to apply it retroactively

to a contract that antedated the statute. The Court, however, declined to answer the question

whether the application of Chapter 93B to contracts antedating its enactment violated the United

States or Massachusetts Constitution. *Hein-Werner Corp.*, 364 Mass. at 530, 306 N.E.2d at 446.

Similarly, in *Tober Foreign Motors, Inc. v. Reiter Oldsmobile, Inc.*, 376 Mass. 313, 334, 381

N.E.2d 908, 920 (1978), the Court refused to answer the question whether the 1970 version or

1977 version of Chapter 93B would apply to any further proceedings wherein the new franchisee

was appointed shortly before the 1977 amendments took effect. As Lee's contractual rights were

determined before the 2002 amendments, those amendments cannot now be applied to take away

those bargained for rights. *See Gopen v. American Supply Co.*, 10 Mass. App. Ct. 342, 350, 407

N.E.2d 1255, 1260 (1980) (noting the rule against retroactive application "takes on additional

significance where, as here, relationships created by a contract antedating the statute are challenged").

In evaluating the reasonableness of applying the 2002 amendments to Lee, it is critical to note that Chapter 93B was enacted to protect dealers such as Lee from Jaguar's:

> virtually complete control over their dealers as a result of their awesome power to terminate or fail to renew a franchise.

*Beard Motors, Inc.*, 395 Mass. at 432, 480 N.E.2d at 306; *see also Tober Foreign Motors, Inc.*, 376 Mass. at 321, 381 N.E.2d at 912 ("Legislature might act for the express purpose of protecting dealers against what it could conceive to be the inequitable consequences of overweening economic power wielded by manufacturers...."). As set forth in *Tober Foreign Motors, Inc.*, 376 Mass. at 321, 381 N.E.2d at 912:

> Yet another technique with potentialities of unfairness is the granting of new franchises near established ones: having invested in his dealership, a dealer who has displeased the manufacturer, or who simply appears to be dispensable, finds his business turned into a losing venture overnight by the award of a new franchise around the corner, and, it may be, without any practical benefit to, or, indeed, with negative effects on, the buying public.

Based upon the purpose of Chapter 93B, it would indeed be a perverse result to allow Jaguar to place a new dealership in an area that had been "protected" for over thirty (30) years. Such an inequitable result affecting Lee's substantive rights should not be condoned by the Court and was not the intent of the 2002 amendments. Either the 2002 amendments violate Lee's due process rights or Lee should be permitted to demonstrate that areas outside the eight (8) mile radius are still protected. Accordingly, the 2002 amendments cannot be retroactively applied to Lee to the extent they eradicate Lee's substantive rights that antedate the amendments.

**D.**    **Norwood, Massachusetts Was Part of Lee's Bargained For Market at the Time It Entered Into the Dealer Agreement**

As set forth above, Lee entered into the Dealer Agreement in 1989, after already serving as a Jaguar franchisee for approximately fifteen (15) years. Unlike the cases relied upon by Jaguar, Lee was assigned an AOR that included Norwood, Massachusetts before it entered into the new Dealer Agreement in 1989. The AOR was confirmed in maps Jaguar provided to Lee and Lee actively cultivated the Norwood area. When Lee agreed to spend in excess of $6 million to build a new facility in order to keep the Jaguar franchise, it understood it would be keeping its AOR as part of that agreement. In fact, Lee understood the term "market" as set forth in the Dealer Agreement to include those areas previously assigned to it, which was also represented to Lee if he agreed to build a new facility. Moreover, based upon the then current state of the law, which was referenced in the Dealer Agreement, Lee's relevant market area included, at a minimum, those statutorily-protected areas, which included Norwood, Massachusetts. Based upon the fifteen (15) year course of dealing, prior assignment of Norwood, Massachusetts as part of Lee's AOR and Jaguar's representation, the term "market" as set forth in the Dealer Agreement includes Norwood, Massachusetts. *See Ricky Smith Pontiac, Inc.*, 14 Mass. App. Ct. at 417, 440 N.E.2d at 43 (noting that term "market" set forth in franchise agreement, coupled with franchise agreement's reference to governance by applicable law, made Chapter 93B the controlling definition).

In addition, Jaguar's argument that Section 7.2 of the Dealer Agreement (providing that nothing limits the geographic area into which, or the persons to whom, Lee may sell Jaguar products) provides Lee no exclusive territory is flawed. Section 7.2 merely provides that Lee can sell vehicles anywhere it wants and to whomever it wants. Section 7.2 does not mean that

- 16 -

Jaguar can place a competing franchisee in Lee's market.  As the Court stated in *Ricky Smith*

*Pontiac, Inc.*, 14 Mass. App. Ct. at 424, 440 N.E.2d at 47,

> Common sense suggests that the placement of a competing
> automobile dealership within the market area of an existing
> dealership should normally have some direct negative economic
> impact on the existing dealer in terms of lost sales and diminished
> profits.

The reference to "non-exclusive" in the Dealer Agreement neither alters Lee's understanding of

the other provisions in the Dealer Agreement nor changes Jaguar's representations and the

parties' fifteen (15) year course of dealing prior to entering into the Dealer Agreement.  Further,

Jaguar's attempt to rely upon a self-serving October 1993 letter to alter the terms and the parties'

understanding of the 1989 Dealer Agreement must fail.  Based upon the foregoing, an issue of

fact exists as to the "market" assigned to Lee by virtue of the 1989 Dealer Agreement, Jaguar's

representations, and the parties' fifteen (15) year course of dealing that precludes an award of

summary judgment.

> E.    **Lee Has Adduced Sufficient Evidence Regarding Its Estoppel Defense and
> Claim for Breach of the Implied Covenant of Good Faith and Fair Dealing to
> Preclude the Entry of Summary Judgment**

"Estoppel is an equitable doctrine created to prevent one from benefiting from his own

wrongdoing and to avoid injustice." *Harrington v. Fall River Housing Auth.*,  27 Mass. App. Ct.

301, 307, 538 N.E.2d 24, 29 (1989).  The theory of promissory estoppel permits recovery if: (1)

a promisor makes a promise which he should reasonably expect to induce action or forbearance

of a definite and substantial character on the part of the promisee; (2) the promise does induce

such action or forbearance; and (3) injustice can be avoided only by enforcement of the promise.

*Loranger Constr. Corp. v. E.F. Hauserman Co.*, 6 Mass. App. Ct. 152, 154-55, 374 N.E.2d 306,

308 (1978).

As set forth above, Jaguar informed Lee it could keep its assigned AOR if it agreed to build a new facility. In reliance upon that promise, Lee expended in excess of $6 million to build the facility. Jaguar should now be estopped from attempting to argue that Lee has no exclusive territory and attempting to locate a new dealership in Norwood, Massachusetts.

In addition, Jaguar opened a competing dealership in Lee's AOR in Hanover, Massachusetts and then sought Lee's support to open another dealership in Lee's AOR in Braintree, Massachusetts. At the time, Lee questioned whether Jaguar intended to place a dealer in the Norwood/Walpole area, which was in much closer proximity to his dealership, but Jaguar assured Lee that the new point would be in Braintree throughout the approximately two (2) year process. Now that the Hanover dealership is open, and Lee has not taken any legal action with respect to either that dealership or the new point in Braintree, Jaguar seeks to place yet another dealership in Norwood. Based upon Jaguar's actions in deciding to place a new dealer in Norwood, and Lee's forbearance from enforcing its legal rights in connection with the Hanover dealership, Jaguar should be estopped from opening the Norwood Dealership.

Moreover, the 1989 Dealer Agreement established Lee's "market" based on the parties' course of dealing and understanding at that time. "Every contract imposes upon each party a duty of good faith and fair dealing in its performance and its enforcement." *Tufankjian v. Rockland Trust Co.*, 57 Mass. App. Ct. 173, 174 n.1, 782 N.E.2d 1, 3 (2003). Jaguar should not be permitted to circumvent the intended meaning of the contract to place a new dealership in Norwood, Massachusetts. To the contrary, Section 2.2 of the Dealer Agreement provides that Jaguar is to use its best efforts to assist Lee in its operations. Jaguar's actions in placing a dealership in Norwood are an affront to their requirement to act in good faith. *See Scheck v. Burger King Corp.*, 798 F.Supp. 692, 699 (S.D. Fla. 1992) (finding breach of implied covenant

claim could exist where franchisor located new franchise approximately 2 miles away even though franchise agreement granted no exclusive rights or territory); *In re. Vylene Enterprises, Inc.*, 90 F.3d 1472, 1477 (9th Cir. 1996) (finding breach of implied covenant where franchisor attempted to locate new franchise 1.4 miles away as it would destroy fruits of initial contract). As such, an award of summary judgment is improper.

## F.    Lee Should Be Permitted to Conduct Discovery Prior to the Court's Entry of Summary Judgment or Entry of an Order Partially Dismissing Any Claims

Pursuant to Fed. R. Civ. P. 56(f), when a party opposing summary judgment demonstrates that it is unable to present facts central to its opposition to the motion, the Court may deny the motion, order a continuance to permit discovery, or make any other ruling the Court deems just. Rule 56(f) provides a procedural "escape hatch" for parties who generally require additional time to marshall facts essential to oppose a motion for summary judgment. *Paterson-Leitch Co. v. Massachusetts Mun. Wholesale Elec. Co.*, 840 F.2d. 985, 988 (1st Cir 1998). Rule 56(f) allows the Court to order a continuance to permit discovery or make such other order as is just. *See United States Trust Co. of New York v. Herriot*, 10 Mass. App. Ct. 313, 318, 407 N.E.2d 381, 386 (1980). To the extent the Court determines that Lee has introduced insufficient evidence to defeat the entry of summary judgment - a proposition expressly refuted by Lee - Lee should be permitted to further develop its claims by conducting, *inter alia*, the following discovery: (1) inquire into the decision-making process of Jaguar to appoint a new dealership in Norwood, Massachusetts; (2) determine why Jaguar abandoned the Braintree point; (3) determine what "reasonable criteria" Jaguar used based upon its own self-serving letter; (4) examine the timing and negotiation of the operating agreement for the Norwood Dealership; (5) examine Jaguar's understanding of Lee's AOR throughout its fifteen (15) year relationship prior to executing the 1989 Dealer Agreement; (6) determine what Lee's

"market" and immediate environs as set forth in the Dealer Agreement mean to Jaguar; (7) inquire into Jaguar's rationale and legal justification for attempting to unilaterally change Lee's AOR after the execution of the Dealer Agreement; and (8) obtain an expert report regarding the distances between the two dealerships.  It is expected that the above discovery will provide additional information and documentation supporting Lee's claims.  Based upon the foregoing, Lee should be permitted to conduct discovery prior to the Court entertaining a Motion for Summary Judgment.

## IV.  Conclusion

Based upon the foregoing, Lee respectfully requests that this Court deny Jaguar's Motion and award such additional relief as is just and proper.

In further support of this Opposition, Lee files herewith and hereby incorporates by reference: (1) Affidavit of Christopher J. Lee; (2) Defendant Lee Imported Cars, Inc.'s Response to Plaintiff's Statement of Material Facts; and (3) Defendant Lee Imported Cars, Inc.'s Motion to Strike Portions of the Declaration of George Delaney.

### Request for Oral Argument

In accordance with Local Rule 7.1(D), Lee hereby requests oral argument in connection with Plaintiff's Motion for (1) Summary Judgment on its Declaratory Judgment Claim and (2) Partial Dismissal of Defendant's Counterclaims.

LEE IMPORTED CARS, INC.,
By its attorneys,

Jason A. Manekas, Esquire, BBO No. 632073
Bernkopf, Goodman & Baseman LLP
125 Summer Street, Suite 1300
Boston, Massachusetts 02110
Telephone:    (617) 790-3000

Dated: April  5 , 2004
#287408 v1/24440/4802

- 20 -