UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

-----------------------------------------------------------x

JAGUAR CARS, A Division of the Ford Motor
Company,

                                  Plaintiff,

               - against -

LEE IMPORTED CARS, INC.,

                                 Defendant.

Civ. No. 03CV12532RGS

-----------------------------------------------------------x

**REPLY MEMORANDUM OF LAW IN SUPPORT OF
PLAINTIFF'S (1) SUMMARY JUDGMENT AND DISMISSAL MOTIONS
AND (2) REQUEST FOR SANCTIONS AGAINST DEFENDANT UNDER RULE 56(G)**

Jaguar respectfully submits this reply memorandum of law in further support of its motions for summary judgment and partial dismissal. Jaguar also requests that the Court impose sanctions on Lee under Fed. R. Civ. P. 56(g) for submitting, in bad faith, a false affidavit solely for the purpose of delaying summary judgment in this case. Abbreviated terms used in Jaguar's opening memorandum ("Open. Mem.") are used herein.

**Preliminary Statement**

To defeat summary judgment, Lee must raise a <u>genuine</u> issue of material fact. <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 249 (1986). Lee has not done so.

Lee asserts that its dealership site and the 449 Neponset Street site might be within an 8-mile radius of one another. Yet, Lee fails to submit any evidence -- or information of any kind -- supporting its distance allegations. Instead, Lee merely raises technical objections to the Urban Science measurement showing that the two sites are 10.5 miles apart -- or some <u>2.5 miles</u> beyond the 8-mile statutory RMA.

NY-298475 v1

Lee's objections do not satisfy its burden on this motion. It is well established that the dealer has the burden of proof on the issue of standing under the RMA statute. American Honda Motor Co. v. Bernardi's, Inc., 188 F. Supp. 2d 27, 32 (D. Mass.), aff'd sub nom. American Honda Motor Co. v. Richard Lundgren, Inc., 314 F.3d 17 (1st Cir. 2002) (declaratory judgment action; summary judgment granted to manufacturer where dealer failed to meet burden on standing). The party with the burden of proof on an issue must do more than rely on its allegations and denials in response to a summary judgment motion.

Lee's request for more time to obtain a distance measurement is a transparent delaying tactic. Finding out the distance between two places is not difficult, time-consuming, or expensive. (Jaguar obtained its own measurement within 2 business days.) Jaguar advised Lee of its understanding that the points were more than 8 miles apart by letter dated August 25, 2003 -- over 8 months ago. Lee was required to have a good-faith basis for believing that the two points are within 8 miles of each other before making that allegation in its Answer (¶ 27), Counterclaims (¶ 27), and Third-Party Complaint (¶ 29). See Fed. R. Civ. P. 11(b)(3)-(4).

Moreover, while Lee has apparently devoted no time or money to obtaining a measurement, its owner, Christopher J. Lee ("Mr. Lee"), has admittedly expended more than $220,000 and numerous hours of the time of the attorneys of record in this action in (i) forming a new corporation to purchase a condominium unit near 449 Neponset Street in Norwood for the purpose of having standing to make zoning objections to the Norwood dealership; and (ii) litigating his purported zoning objections before the zoning board and in the state courts. Sullivan Decl., ¶¶ 8-9 and Exs. A and B thereto. Lee has no excuse for not obtaining a distance measurement – other than its desire to delay the new dealership.

Mr. Lee has also attempted to create an issue of fact on the breach of contract issue by submitting an affidavit stating that (i) Jaguar granted Lee an area of responsibility ("AOR") that included Norwood before it signed the Performance Agreement dated November 23, 1987, and the Dealer Agreement dated January 1, 1989; and (ii) that Jaguar orally

2

agreed, in connection with both of these written agreements, that Lee's AOR would not be changed. In support of these assertions, Lee submits an AOR map created by Urban Science (the "Lee AOR Map"), which Mr. Lee states, under oath, that he received in or about 1982.

As a legal matter, Mr. Lee's assertions are not material because they constitute parol evidence offered to contradict the unambiguous terms of the Dealer Agreement. As a factual matter, Mr. Lee's sworn statements are demonstrably false. As shown by the declaration of Mitchell Phillips of Urban Science, the Lee AOR Map was not created by Urban Science prior to 1993, or some **11 years** after Mr. Lee avers that Lee received it from Jaguar. Jaguar submits that sanctions should be imposed under Rule 56(g).

## ARGUMENT

### I. JAGUAR IS ENTITLED TO SUMMARY JUDGMENT

#### A. The 2002 Amendments Apply To This Case.

The effective date of the 2002 amendments is September 1, 2002. See St. 2002, c.222 § 7 (2002). The statute provides that the amendments "shall apply to all franchise agreements existing on or after the effective date," unless the franchisor's notice concerning the new point "has or should have been delivered, as required by [former paragraph (l) of subsection (3) of section 4 of Chapter 93B] before the effective date of this Act." St. 2002, c.222, § 5 (2002). Chapter 93B, § 4(3)(l), as it existed before September 1, 2002, provided, in relevant part, that:

> Any manufacturer, distributor, . . . which intends to grant or enter into an additional franchise or selling agreement, shall, <u>at least sixty days prior to granting such franchise or entering into such agreement</u>, give written notice of its intention to do so to each motor vehicle dealer with a franchise or selling agreement covering the same line make within a twenty mile radius of the location where the business of the proposed franchise will be located.

M.G.L. c. 93B § 4(3)(l) (1977) (emphasis added). In other words, if the manufacturer granted a franchise or entered into a franchise or selling agreement for the new dealership on or before October 30, 2002, a challenge to the new dealership would be governed by the old statute.

Lee suggests it is possible that Jaguar entered into a franchise or selling agreement with "the Norwood Dealership" prior to October 30, 2002. Lee Opp. at 11. This suggestion is based on feigned ignorance of the standard practice that is effectively required by Chapter 93B and similar statutes in other states. Chapter 93B requires that notice be sent out before the franchise is granted. At the same time, the notice must specify the precise location (i.e., the street address) of the new dealership. Obviously, the manufacturer cannot designate a location until it has some sort of an agreement with a prospective franchisee who has the right and/or the ability to open a business at the proposed dealership location. That agreement, however, cannot be a "franchise" agreement; otherwise, it would be impossible to send out the statutory notice, and Chapter 93B would have to be re-designated as "Catch-22." Accordingly, it is standard practice to enter into a preliminary agreement with the prospective franchisee, but not to grant a franchise or enter into a franchise or selling agreement until the dealership actually opens for business. Delaney Reply Decl., ¶ 6.[1]

Here, no Norwood dealership has yet opened for business. Jaguar entered into a preliminary agreement with the prospective Norwood franchisee on August 28, 2003 -- almost a year after the statute's effective date -- in which Jaguar stated its "intention to enter into a standard form of Jaguar Dealer Agreement" upon the fulfillment of certain terms and conditions. Delaney Reply Decl., ¶ 4 and Ex. A, p.2. These include the condition that the dealership facility "will be complete, operational and open for business" by September 30, 2004 -- over two years after the effective date of the amendments. Id., Ex. A, p.2.

---

[1] Manufacturers also employ this procedure because: (a) state statutes such as Chapter 93B provide that, once a "franchise" is granted, it cannot be terminated without good cause, and (b) it would be senseless to grant a "franchise" to someone who might never open for business, especially since such a premature granting of a franchise might give the "franchisee" protest rights under Chapter 93B and thereby prevent the manufacturer from appointing any other dealer in the area.

4

In short, there is no genuine issue of fact that the 2002 amendments apply here.

### B. The Norwood Site Is Not Within Lee's "Relevant Market Area" Under The Amended Statute.

Lee concedes that, if the 2002 amendments apply, "the eight (8) mile radius defines [Lee's] relevant market area." Lee Opp. at 12. However, Lee does not offer any evidence, or any information whatsoever, suggesting that the Norwood site is within 8 miles of Lee. Indeed, Lee conspicuously avoids any affirmative statement in its opposition that the Norwood site is within 8 miles of Lee. Instead, Lee confines itself to attacking Urban Science's 10.5 mile distance measurement on purely technical grounds.

To avoid repetition concerning Lee's attack on Jaguar's proof, Jaguar respectfully refers the Court to its Opposition to Motion to Strike, including the Reply Declaration of George Delaney, dated April 22, 2004, and the Declaration of Joshua Pope, dated April 23, 2004, submitted therewith. This reply will focus on Lee's failure to meet its burden on this motion.

When a summary judgment motion is made and supported, the opposing party "may not rest upon mere allegations or denials," but must set forth "specific facts," supported by competent evidence, "showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e); see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986). Moreover, a party (such as Jaguar) that does not have the burden of proof on an issue need only "point out" the absence of proof to support its adversary's claim; the party with the burden of proof must then present competent evidence showing it can meet its burden. Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986) (explaining that "the burden on the moving party may be discharged by 'showing' -- that is, pointing out to the district court -- that there is an absence of evidence to support the nonmoving party's case").

Lee has the burden of proof on the issue of standing, i.e., that the new point is within its RMA. American Honda Motor Co. v. Bernardi's, Inc., 188 F. Supp. 2d 27, 32 (D.

Mass.) aff'd sub nom., American Honda Motor Co. v. Richard Lundgren, Inc., 314 F.3d 17 (1st Cir. 2002).

Jaguar's motion and the presentation of the Urban Science measurement, obtained and relied on by Jaguar in the regular course of business, was more than sufficient to satisfy Jaguar's burden of "pointing out" the absence of support for Lee's RMA claim. In contrast, Lee has utterly failed to meets its burden. Indeed, it has failed to present information indicating that evidence might be available to support its position.

There is no genuine issue of fact on Lee's standing under the RMA provisions.

### C. Lee's Constitutional Argument Is Meritless.

Lee contends that application of the 2002 amendments to the RMA notice and protest rights would be unconstitutionally retroactive because Lee's Dealer Agreement predates the amendments. Lee Opp. at 13. Of course, the amendments are "retroactive" only in the sense that they apply to pre-existing franchise relationships; the events to which the amendments apply (grant of a new franchise) are prospective only. Here, the amendments do not retroactively alter any of Lee's express rights under the Dealer Agreement, because the agreement says nothing about an RMA or notice and protest rights.

Lee's retroactivity arguments consist of two red herrings and a failure to fairly present the applicable law.

The first red herring is Lee's citation of several cases for the proposition that prior versions of Chapter 93B have not been applied "to contracts that antedate the statute." Lee Opp. at 14. The one case that actually so holds is Hein-Werner Corp. v. Jackson Indus., Inc., 364 Mass. 523, 306 N.E.2d 440 (1974), which involved the original enactment of Chapter 93B in 1971.[2] That statute contained no language indicating that it should apply to pre-existing

---

[2] Foreign Auto Import, Inc. v. Renault Northeast, Inc., 367 Mass. 464, 471, 326 N.E.2d 888, 893 (1975), and Tober Foreign Motors, Inc. v. Reiter Oldsmobile, Inc., 376 Mass. 313, 322 n.10, 381 N.E.2d 908, 913 n.10 (1978), merely cite Hein-Weiner in dictum. In Gopen v. American Supply Co., 10 Mass. App. Ct. 372, 407 N.E.2d 1255 (1980), the court dealt with the distinct issue of whether Chapter 93A,

6

franchise agreements, and the Court followed the "general rule of interpretation" that all statutes are prospective "unless an intention that they shall be retrospective appears by necessary implication from their words" or other circumstances. Id. at 525, 306 N.E.2d at 442. Here, the language of the 2002 act is explicit: "This act shall apply to all franchise agreements <u>existing on or after the effective date of this chapter</u> [i.e., September 1, 2002] . . . ." 2002 Mass. Legis. Serv. Ch. 222, § 5 (emphasis added). The underscored language would be nullified if the amendments were held not to apply to dealer agreements, such as Lee's, simply because they "antedate" the statute. As one of the other cases cited by Lee recognizes, Hein-Werner and similar cases are inapposite when the Legislature expressly provides for retroactive application. See Leibovich v. Antonellis, 410 Mass. 568, 576 n.6, 574 N.E.2d 978, 984 n.6 (1991) (<u>upholding</u> statute that retroactively granted parents' loss of consortium claim for child's injury).

        Lee's second red herring is the notion that the statutory RMA notice and protest rights, as they existed in 1989, somehow became "bargained for" rights under the Dealer Agreement because the agreement contains a boilerplate choice of law clause, which provides: "This agreement is to be governed by, and construed in accordance with, the laws of the state in which the Dealer is located." (Delaney Decl., Ex. 1 ¶ 4.) Under Massachusetts law, however, the 2002 amendments do apply to Lee's Dealer Agreement and do govern this dispute. Thus, application of the choice of law provision requires application of the 2002 amendments. The Dealer Agreement does not say that it shall be governed by Massachusetts law "as it existed on January 1, 1989 without regard to subsequent legislative amendments, new court decisions, etc." Moreover, the idea that it was the intent of the parties to adopt the 1989 statutory RMA as a

---

governing unfair or deceptive business practices, applied to <u>conduct</u> performed before the statute's enactment, and held that it did not. Id. at 347-48, 407 N.E.2d at 1258-59. The court noted, as a buttressing argument at the very end of its decision, that the presumption against retroactive application "takes on additional significance" when "relationships created via contract antedating the statute" are also at issue. Id. at 350, 407 N.E.2d at 1259.

7

protected "territory" for Lee through the choice of law provision contradicts the contract's express language making Lee a "non-exclusive" dealer.[3]

Third, there is no legal support for Lee's argument that the 2002 amendments are unconstitutionally retroactive. Lee cites American Manufacturers Mut. Ins. Co. v. Commissioner of Ins., 374 Mass. 181, 372 N.E.2d 520 (1978), as the leading case. There, the Court upheld the constitutionality of a statute that retroactively reduced the premiums for insurance contracts that antedated the statute and required the insurers to refund some $45 million to their insureds. The court's test of "reasonableness" -- notably omitted from Lee's brief -- is the familiar "rational basis" test:

> The [challengers] carry a heavy burden in seeking to overcome the statute's presumption of constitutionality. "Every rational presumption is indulged of favor of the validity of [a statute]. Enforcement of such legislative enactment will not be refused unless its conflict with some provision of the Constitution is established beyond reasonable doubt." This is particularly the case with economic and remedial social enactments. In this sphere the burden on the [challengers] to make factual showings that the statute is irrational in its operation, and it has been our frequently stated rule that such a statute will not be set aside as a denial of due process "if any set of facts reasonably may be conceived to justify it."

374 Mass. at 190, 372 N.E.2d at 525-26 (citations omitted). The Court went on to state that "reasonableness" (as defined above) "can best be examined from three principal viewpoints: the nature of the public interest which motivated the Legislature to enact the retroactive statute; the nature of the rights . . . affected retroactively; and the extent or scope of the statutory effect or impact." Id. at 191, 372 N.E.2d at 526.

---

[3] Lee disingenuously cites Ricky Smith Pontiac, Inc. v. Subaru of New England, Inc., 14 Mass. App. Ct. 396, 417, 440 N.E.2d 29, 43 (1982), as supporting this argument. Lee Opp. at 16. The cited portion of Ricky Smith involved an express contractual provision that required the manufacturer, before appointing a new dealer "in or near" the contracting dealer's "market area," to discuss with the existing dealer whether additional dealerships were warranted based on "objective statistical criteria." 14 Mass. App. Ct. at 416 n.22, 440 N.E.2d at 43 n.22. Lee's Dealer Agreement contains no similar provision. Moreover, the Ricky Smith court did not hold that the contract adopted the RMA as the market area; it merely observed that it was "common ground" between the parties that the contract provision did not grant the dealer more expansive rights than those granted in Chapter 93B. Id. at 417 & n.23, 440 N.E. 2d at 43 & n.23.

The Legislature could have rationally concluded that it was in the "public interest" to eliminate protracted, expensive litigation over standing by replacing the prior, indefinite RMA definition with the a bright-line, 8-mile radius definition. See American Honda Motor Co., 314 F.3d at 18 (noting that RMA definition has previously been amended in a "thus-far frustrated effort by the legislature to avoid protracted litigation over th[e] initial 'standing' requirement"). The Legislature could further have rationally concluded that it is in the interests of consumers, manufacturers, prospective dealers, and the public at large to have greater certainty as to the locations where new motor vehicle dealerships may be established without years of litigation. See Carleton v. Town of Framingham, 418 Mass. 623, 633, 640 N.E.2d 452, 458 (1994) (upholding statute that retroactively abolished plaintiffs' cause of action and a prior judgment in their favor; "the amendment purports to clarify rights and obligations in an area of law marked by uncertainty, a worthy legislative goal"). Obviously, intrabrand competition is in the public interest.

With respect to the "nature of the rights affected retroactively," the RMA provisions were, in the first instance, a legislative creation that diminished manufacturers' rights to appoint additional dealers and granted new, statutory rights to dealers. Lee does not cite a single case where a court has held that the Legislature, having created a statutory right, cannot later amend or modify the right. Indeed, courts have held that the Legislature may retroactively abolish a statutory right. See Carleton, 418 Mass. at 630, 640 N.E.2d at 456 (noting, in upholding amendment that retroactively abolished certain common law claims, that some courts "have held that a statutorily created cause of action is not a 'vested right' and, therefore, may properly be abolished retroactively"). Not surprisingly, courts have routinely upheld statutes that retroactively amend previously-granted statutory rights. See, e.g., In re Liquidation of American Mutual Liability Ins. Co., 434 Mass. 272, 282-286, 747 N.E.2d 1215, 1222-1226 (2001) (upholding statute re-ordering priority of claims in insurance liquidation proceedings); Parello v. McKinney, 46 Mass. App. Ct. 785, 710 N.E.2d 613 (Mass. App. Ct. 1999) (upholding statute

9

retroactively abolishing legislatively-created cause of action against homeowners for injuries to workers); Connolly's Case, 418 Mass. 848, 852, 642 N.E.2d 296, 299 (1994) (upholding statute that retroactively permitted insurers to terminate workers' compensation benefits to incarcerated claimant); cf. Nantucket Conservation Foundation, Inc. v. Russell Mgmt., Inc., 380 Mass. 212, 215, 402 N.E.2d 501, 504 (1980) (upholding statute that expanded rights under pre-existing ingress and egress easements by adding rights to install gas, telephone, and electrical lines).

Finally, the effect or impact of the amendments on Lee is uncertain at best. Under the prior RMA statute, Lee would not have been able to block the new dealership unless Lee could prove (i) that the new point was within its statutory RMA – i.e., the territory in which it made two-thirds of its retail new vehicle or service sales during the three-year period preceding the notice;[4] and (ii) that the appointment of the new dealer was "arbitrary." See Gallo Motor Center Corp. v. Mazda Motors of America, Inc., 204 F. Supp. 2d 144, 151-52 (D. Mass. 2002), aff'd, 347 F.3d 20 (1st Cir. 2003) (dealer failed to satisfy the burden of proof that new point was "arbitrary"). In establishing a bright-line, 8-mile RMA definition for various counties (including Lee's), the Legislature could rationally have concluded that it is, as a rule, not "arbitrary" or unfair to locate a new dealer more than 8 miles from an existing dealership in these areas. Thus, Lee's claim that the 2002 amendments actually deprive Lee of a "substantive" right to be free of competition from a Norwood dealer is extremely tenuous.

In short, there was a rational basis for the Legislature to make the 2002 amendments applicable to all future new dealership points, regardless of whether an existing dealer's franchise antedated the statute.

### D. The Lee Affidavit Cannot Be Used To Contradict The Unambiguous Terms Of The Dealer Agreement

It is well-established that parol evidence cannot be used to contradict the unambiguous terms of an integrated contract. See, e.g., Bank v. International Business Machines

---

[4] Jaguar does not concede that Norwood was within Lee's pre-amendment RMA, but the issue is not material to this motion.

Corp., 145 F.3d 420, 423-25 (1st Cir. 1998) (unambiguous, integrated agreement cannot be modified by alleged earlier or contemporaneous discussions); Coll v. PB Diagnostic Systems, Inc., 50 F.3d 1115, 1112 (1st Cir. 1995) (evidence of prior or contemporaneous oral agreements cannot be admitted to modify or vary the terms of an unambiguous contract); Massachusetts Mutual Life Ins. Co. v. Aritech Corp., 882 F. Supp. 190, 194 (D. Mass. 1995) (holding that prepayment provision of note was not ambiguous and therefore court could not consider parol evidence to alter its terms); Corcoran Mgmt. Co. v. Town of Framingham, No. 021836, 2003 WL 21960676, at *6 (Mass. Super. July 3, 2003) (statements in affidavits concerning agreements and understandings could not be used to forestall summary judgment).

The Dealer Agreement expressly provides that it "supercedes all prior agreements, whether oral or written . . . (except any Performance Agreement(s) between [Jaguar] and [Lee] which is/are expressly made a part hereof)."[5] Delaney Decl. Ex. 1, ¶ 5. In addition, the parties expressly acknowledge in the Dealer Agreement that "[n]o representations or statements, other than those expressly set forth herein, were made or relied upon by [Jaguar] or [Lee] in entering into this Agreement." Delaney Decl., Ex. 1, Standard Provisions ¶ 18.2.

Contrary to the foregoing contractual provisions, and contrary to the contract's express statement that Lee is a "non-exclusive" dealer, Mr. Lee has submitted an affidavit claiming that Jaguar promised Lee territorial exclusivity. Mr. Lee claims that Jaguar assigned Lee an AOR in the 1970's and/or early 1980's (Lee Aff., ¶¶ 3-4, 9), and orally promised, in connection with the 1987 Performance Agreement and the 1989 Dealer Agreement, that Lee "could keep its . . . assigned AOR." Lee Aff., ¶ 4 (1987 agreement); see id., ¶ 9 (1989 agreement). Lee gives no specifics of the circumstances of these alleged promises, and the one specific claim he makes -- that he was given the Lee AOR Map in 1982 (Lee Aff., ¶ 9 and Ex. A) -- is clearly untrue. See Phillips Decl. ¶¶ 4, 7-9 and Section V below. Even assuming

---

[5] The Dealer Agreement does not expressly make any Performance Agreement a part thereof. However, even assuming arguendo that the 1987 Performance Agreement is made part of the Dealer Agreement, it does not grant Lee any rights to Norwood or mention any territory whatsoever.

Mr. Lee's statements to be true, however, they raise no genuine issue of material fact because they are precluded by the parol evidence rule.

Lee makes no attempt to demonstrate any ambiguity in the Dealer Agreement. Instead, Lee simply asserts that "[t]he reference to 'non-exclusive' in the Dealer Agreement neither <u>alters</u> Lee's understanding of the other provisions in the Dealer Agreement nor <u>changes</u> Jaguar's representations and the parties' fifteen (15) year course of dealing prior to entering into the Dealer Agreement." Lee Mem. at 17 (emphasis added). Lee, however, points to <u>no</u> "other provisions" in the Dealer Agreement that support its alleged "understanding."

Lee has put the analytical cart before the horse: a party cannot use parol evidence to create an ambiguity in a contract, only to explain an ambiguity already in the contract. <u>See, e.g.</u>, <u>Coll</u>, 50 F.3d at 1122 (under Massachusetts law, parol evidence may not be used to create ambiguity in a contract where none otherwise exists; instead, parties are bound by the plain terms of their contract and their subjective understandings are immaterial); <u>Aerostatic Eng'g Corp. v. Szczawinski</u>, 1 Mass. App. Ct. 141, 143, 294 N.E.2d 521, 522 (Mass. App. Ct. 1973) (alleged prior oral agreement does not create issue of fact where agreement was unambiguous). As numerous cases have held -- including one case construing the Jaguar Dealer Agreement -- an agreement granting a "non-exclusive" dealership unambiguously means that the dealer does not have an exclusive territory. Opening Mem. at 8-9 (collecting cases).

<u>Borschow Hospital & Med. Supplies, Inc. v. Cesar Castillo Inc.</u>, 96 F.3d 10 (1st Cir. 1996), is on point. There, the plaintiff signed a contract appointing it as "the [defendant's] *nonexclusive* independent distributor of the [defendant's] Products for Regular Business in the Territory [i.e., Puerto Rico] during the term of this Agreement.'" <u>Id.</u> at 12 (emphasis added by the First Circuit). Plaintiff signed the contract only after (i) it was orally assured by defendant's regional representative that the "true" relationship would be exclusive and (ii) plaintiff received a "two-page undated and unsigned outline" that granted it exclusivity.

Id. at 12-13. While this evidence is far more compelling than anything Lee has presented,[6] the First Circuit nevertheless held that the evidence could not be considered because the contract "clearly and unambiguously gives [plaintiff] a 'non-exclusive' distributorship." Id. at 16. While Borschow was decided under the Puerto Rico parol evidence rule, that rule is substantively the same as the Massachusetts rule on this point. See id. at 15.

Here, the Dealer Agreement gives Lee a non-exclusive dealership in almost identical language as that in Borschow. As in that case, summary judgment should be granted.

## II.  LEE RAISES NO ISSUE OF FACT ON ANY DEFENSE

Lee does not even attempt to support any of its eight affirmative defenses, save (perhaps) one. Lee tries to use the same extrinsic allegations that are barred by the parol evidence rule to support what it labels, in the heading of Section III.E. of its Opposition (p. 17), as an "Estoppel Defense." The parol evidence rule would be eviscerated if the courts allowed such stratagems, and, of course, they do not. Moreover, Lee has confused the defense of "equitable estoppel" with an affirmative claim for damages under the theory of "promissory estoppel" -- a claim that is not even pleaded in Lee's Counterclaims.

As set forth in Jaguar's opening memorandum, to successfully assert an estoppel defense Lee must demonstrate that Jaguar intentionally and fraudulently induced Lee to act to its detriment. See Dunkin' Donuts Inc. v. Panagakos, 5 F. Supp. 2d 57, 61 (D. Mass. 1998). Lee does not allege, and Mr. Lee's affidavit does not assert, any fraud on Jaguar's part or any facts suggesting fraud. Indeed, Lee's submissions do not even satisfy Rule 9(b). This is not surprising, since the authorities Lee cites relate to a promissory estoppel claim, not an estoppel defense.

---

[6] Unlike the plaintiff in Borschow, Lee gives no specifics of his alleged oral communications -- not who, what, where, or when -- and he presents no writing stating that his alleged AOR was to be exclusive.

13

In any event, neither Lee's defense nor its Counterclaims can be sustained on this unpleaded "promissory estoppel" theory. Where, as here, an integrated contract contains provisions that contradict the alleged oral promise, reliance on that promise is unreasonable as a matter of law. Coll, 50 F.3d at 1124 (affirming summary judgment dismissing promissory estoppel claim).

\* \* \*

In sum, Jaguar has established that Lee has no statutory or contractual right to complain about the establishment of the Norwood point, and Lee has not established any defense. Summary judgment should be granted on Jaguar's declaratory judgment claim.

### III. LEE'S COUNTERCLAIMS SHOULD BE DISMISSED TO THE EXTENT BASED ON THE NORWOOD POINT

Lee's Counterclaims for violation of Chapter 93B (Count IV) and breach of contract (Count I) fail as a matter of law, and should be dismissed, for the same reasons set forth in Sections I.A-C and I.D, respectively.

Lee does not even attempt to defend its claim for intentional interference (Count III). Accordingly, that claim should be dismissed for the reasons stated in the Open. Mem. at 15-16.

Finally, Lee ignores the Massachusetts decisions holding that an "implied covenant" claim cannot be used to override the express terms of the contract. Open. Mem. at 13-14. Instead, Lee relies on Scheck v. Burger King Corp., 798 F. Supp. 692 (S.D. Fla. 1992) (Florida law), and In re Vylene Enterprises, Inc., 90 F.3d 1472, 1477 (9th Cir. 1996) (California law).

The holding and reasoning of Scheck were specifically rejected by the Eleventh Circuit in Burger King Corp. v. C.R. Weaver, 169 F.3d 1310, 1317 (11th Cir. 1999). Finding Scheck "unconvincing" and badly reasoned, the Eleventh Circuit rejected a franchisee's "implied covenant" claim on the very same grounds Jaguar has urged here: "if one party to a contract has

no *right* to exclusive territory, the other party has no *duty* to limit licensing of new [franchisees]." Id. at 1317 (emphasis is original). Thus, Scheck is not even good law in the Florida federal courts.

Vylene is inapposite since it was decided under California law. It is unpersuasive since it adopted Scheck's reasoning without analysis before Scheck was authoritatively rejected by the Eleventh Circuit. And it is distinguishable because it involved a franchisor who failed to perform in good faith its express contractual duty to negotiate a renewal of the franchise and simultaneously appointed a new franchisee only 1.4 miles away. Here, allowing an implied covenant claim where the new dealership is well over 8 miles away would undercut the Legislature's attempt to provide clarity in this area, especially where (as here) the claim would also override the express terms of the contract.

In sum, all of Lee's Counterclaims should be dismissed to the extent they are based on the Norwood point.

### IV.     THE COURT SHOULD REJECT LEE'S REQUEST FOR DISCOVERY

Lee requests time to conduct discovery pursuant to Rule 56(f) of the Federal Rules of Civil Procedure. To satisfy Rule 56(f), Lee must "articulate a plausible basis for the belief that discoverable materials exist which would raise a trialworthy issue." Licari v. Ferruzzi, 22 F.3d 344, 350 (1st Cir. 1994); see C.B. Trucking, Inc. v. Waste Mgmt., Inc., 137 F.3d 41, 44-45 (1st Cir. 1998) (denying Rule 56(f) relief where party "failed to identify any material evidence that it was likely to uncover if it was given additional time to conduct discovery"); Fennell v. First Step Designs, Ltd., 83 F.3d 526, 531 (1st Cir. 1996).

Lee fails to articulate any such basis. The categories of information that Lee seeks to inquire into are irrelevant to the summary judgment issues. For example, Jaguar's "decision making process" in appointing the Norwood dealer is irrelevant to the issue of

15

standing. Either the Norwood dealership falls within Lee's RMA or it does not.[7] Similarly, the reasons why Jaguar "abandoned" the Braintree point have nothing to do with the issues before the Court. As shown above, the arguments concerning the Norwood point are not material since no franchise has yet been opened.

Moreover, the discovery that Lee seeks on Jaguar's "understanding of Lee's AOR" prior to the execution of the 1989 Dealer Agreement and Jaguar's "rationale and legal justification for attempting to unilaterally change Lee's AOR after the execution of the Dealer Agreement" is futile. See, e.g., Bank One Texas, N.A. v. A.J. Warehouse, Inc., 968 F.2d 94, 100 (1st Cir. 1992) (holding that district court did not err in denying request for discovery into parties intent where the intent of the parties was clear and free from ambiguity from the plain language of the agreement). See Point I.D above. Finally Lee has had ample time and opportunity to obtain a distance measurement. Sullivan Decl., ¶ 3.

## V. THE COURT SHOULD GRANT RULE 56(G) SANCTIONS AGAINST LEE.

Rule 56(g) of the Federal Rules of Civil Procedure provides that, should the court become convinced that any of the affidavits submitted pursuant to Rule 56 have been presented in bad faith or solely for the purpose of delay, the court "shall forthwith order the party employing them" to pay the other party the amount of the reasonable expenses, "including reasonable attorney's fees," that the filing of the affidavits caused the other party to incur. Fed. R. Civ. P. 56(g) (2004).

Mr. Lee has submitted an affidavit in opposition to summary judgment in which he claims that Jaguar gave Lee an AOR map prepared by Urban Science, which is annexed as

---

[7] Lee had a duty to inquire into the distance between Lee and the proposed Norwood dealership prior to filing its counterclaim against Jaguar. The Court should not reward Lee's lack of diligence and good faith by giving it additional time to obtain a distance measurement.

16

Exhibit A to Mr. Lee's affidavit (the "Lee AOR Map"), in 1982. Lee then builds its entire defense on the contract issue around the Lee AOR Map, pointing to it as proof that (i) Jaguar assigned Lee an AOR prior to the 1987 Performance Agreement and the 1989 Dealer Agreement and (ii) Jaguar misrepresented the facts to this Court when it stated in its opening papers that it did not assign an AOR to Lee until it sent Lee the letter dated October 22, 1993. Compare Lee Opp. at 4-6 with Delaney Decl. ¶ 7 and Ex. 8 thereto.

Jaguar has submitted the Declaration of Mitchell J. Phillips, Global Practice Director of Urban Science, who personally handled the Jaguar accounts during the years at issue. Mr. Phillips avers that (i) the 1982 date on the Lee AOR Map is the copyright date, not the date the map was prepared; and (ii) the Lee AOR Map was not created before 1993 at the earliest.

Mr. Lee has evidently seized on the 1982 copyright date to make a bad-faith assertion that Lee was promised an exclusive AOR before renovating his facilities in the late 1980's and thereby raising a feigned issue of fact for purposes of delaying summary judgment. While Lee is entitled to oppose Jaguar's summary judgment motion, its attempt to create a genuine issue of fact in this manner should not be condoned by this Court and is exactly the kind of conduct Rule 56(g) was meant to prevent. See, e.g., Barticheck v. Fidelity Union Bank/First Nat'l State, 680 F. Supp. 144 (D.N.J.1988) (Rule 56(g) sanctions granted where party attempted to create material issue of fact by contradicting prior sworn testimony); Acrotube, Inc. v. J.K. Fin. Group, Inc., 653 F. Supp. 470, 478 (N.D. Ga.1987) (Rule 56(g) sanctions granted where affidavit flatly at odds with facts indisputably within affiant's knowledge). Mr. Lee's false affidavit necessitated, in part, Jaguar's need to file a reply brief in this case and to submit additional affidavits. The Court should not condone Lee's conduct and should impose sanctions against

Lee. Specifically, the Court should award Jaguar the reasonable attorney's fees it incurred in responding to Mr. Lee's affidavit.

Dated:   New York, New York
         April 26, 2004

Respectfully submitted,

KIRKPATRICK & LOCKHART LLP

By: _____
John J. Sullivan (admitted *pro hac vice*)
599 Lexington Avenue
New York, New York 10022
(212) 536-3900

KIRKPATRICK & LOCKHART LLP

Sarah C. Kellogg (BBO# 637530)
75 State Street
Boston, Massachusetts 02109

Attorneys for Jaguar Cars, a Division of the Ford Motor Company