UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

---------------------------------------------------------x

JAGUAR CARS, A Division of the Ford Motor Company,

                Plaintiff,

- against -

LEE IMPORTED CARS, INC.,

                Defendant.

Civ. No. 03CV12532RGS

**REPLY DECLARATION OF GEORGE DELANEY IN SUPPORT OF PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND PARTIAL DISMISSAL OF DEFENDANT'S COUNTERCLAIMS**

---------------------------------------------------------x

I, George Delaney, do hereby declare as follows:

    1.    As stated in my prior Declaration dated February 26, 2004, I am the Franchise Development Manager, Northern Region, for Plaintiff Jaguar Cars, a Division of the Ford Motor Company ("Jaguar"). I am also the Franchise Development Manager, Northern Region, for Land Rover North America, Inc. ("LRNA"). Jaguar's and Land Rover's franchise development functions are coordinated in a business unit known as "Aston Martin Jaguar Land Rover" ("AMJLR"). I have personal knowledge of the facts stated herein.

    2.    AMJLR was created in or about August 2001. Prior to the creation of AMJLR, I was involved in franchise development for LRNA for 9 years. I have held my current position as Franchise Development Manager, Northern Region for both Jaguar and LRNA since January 2002. Massachusetts is part of Jaguar's and LRNA's Northern Region.

    3.    Among my responsibilities as Franchise Development Manager, Northern Region for Jaguar and LRNA is the negotiation with and preparation of preliminary agreements for potential franchisees for the establishment of new Jaguar and Land Rover dealerships. Jaguar calls these preliminary agreements "Performance Agreements," and LRNA calls them "Letters of Intent."

NY-298534 v1

## The Norwood Performance Agreement

4.  Annexed hereto as Exhibit A is a true copy of a Performance Agreement, dated August 28, 2003, between Sheree Kaplan-Allan and Jake Kaplan, Inc. (collectively, "Kaplan") and Jaguar for the establishment of a Jaguar dealership in Norwood, Massachusetts. In the first sentence of the Performance Agreement, Jaguar advises Kaplan of Jaguar's "intention to enter into a standard form of Jaguar Dealer Agreement" with Kaplan upon Kaplan's "fulfillment of the terms and conditions of the Performance Agreement . . . ." (Ex. A, p.1.) Among the conditions is that Kaplan's facility for its dealership "will be complete, operational, and open for business" by September 30, 2004. (Ex. A, p.2.)

5.  As of today's date, Jaguar has not granted Kaplan a franchise or a dealer agreement or any other agreement under which Kaplan may sell Jaguar vehicles or other Jaguar products in Norwood, Massachusetts (hereinafter, a "selling agreement"). Nor has Jaguar granted a franchise or entered into a dealer agreement or selling agreement with any other party with respect to Norwood, Massachusetts.

6.  It is Jaguar's standard business practice not to grant a franchise, or to enter into any dealer agreement or selling agreement, until all conditions of a Performance Agreement are fulfilled and the facility is ready and open for business. I also note that, in my entire 11-year experience in franchise development for LRNA, it has also been LRNA's standard practice not to grant a franchise or enter into a dealer agreement or selling agreement until the dealership facility is open for operation.

7.  I am advised by counsel that, in its opposition papers, Lee has asserted that there is an issue of fact as to whether Jaguar granted a franchise or entered into a dealer agreement or selling agreement with "the Norwood dealership" on or before October 30, 2002. There is no "Norwood dealership" as of yet. In addition, as Franchise Development Manager, Northern Region, I can and do state categorically that no agreement concerning a Norwood dealership was entered into with Kaplan, or any other party, prior to October 30, 2002, and that the Performance Agreement, dated August 28, 2003 -- which is not a franchise, a franchise

2

agreement, a dealer agreement, or a selling agreement -- is the first agreement Jaguar entered into with Kaplan concerning a Jaguar dealership in Norwood.

### The Dealer Distance Map

8. In July 2003, in the ordinary course of business, I requested that Jaguar obtain a dealer distance map for various points in the Boston market. One of the purposes of my request was to determine whether Jaguar had any obligation, under Chapter 93B of the Massachusetts statute, to provide notice of the potential Norwood point to existing dealers, including Lee Jaguar. It was and is my understanding that notice must be given to dealers whose dealership property is within an 8-mile radius of the new dealership point.

9. In response to my request, Jaguar received from Urban Science the dealer distance map annexed as part of Exhibit 3 to my prior Declaration (the "Boston Dealer Distance Map"). After reviewing that map, I concluded that there was no need to provide a Chapter 93B notice to Lee Jaguar because the two points were 10.5 miles apart. Accordingly, I instead sent Lee what we call a "clear-the-market" letter, i.e., a letter sent as a courtesy to our existing dealers to advise them of our market plans. That letter, dated August 25, 2003, is annexed as Exhibit 2 to my prior Declaration.

10. In the ordinary course of business, both Jaguar and LRNA regularly rely on dealer distance maps from Urban Science to make significant business decisions, including whether notice is required under governing statutes. In my experience, I have found Urban Science's dealer distance maps to be accurate and reliable.

11. I am advised that Lee has contended, in its opposition papers, that the Boston Dealer Distance Map does not show that the two points are more than eight (8) miles apart because the distance was not measured from the "closest boundary" of each dealership's property. Because the Urban Science measurement shows that the two dealerships are 10.5 miles apart, however, I did not see, and do not now see, any reason to obtain a measurement from the "nearest boundary" of each site. I have personally visited each site. The Norwood site is approximately 3.4 acres, and is roughly square in shape. I do not know the precise acreage of

Lee's site, but it is of rectangular shape. I estimate that it is less than 4 acres and less than 700 feet at its longest dimension. Accordingly, a re-measurement using the "nearest boundary" from each site could not conceivably eliminate the 2.5 mile bulge, as measured by Urban Science, in excess of the 8-mile radius.

      Signed under the pains and penalties of perjury this 22nd day of April, 2004.

                                                              _____
                                                              George Delaney

**CERTIFICATE OF SERVICE**
I hereby certify that on this day a true copy of the above document was served upon the attorney of record for each party by mail/by hand.
Date: 4/26/04