UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 03-CV-12532-RGS

JAGUAR CARS

v.

LEE IMPORTED CARS, INC.

<u>MEMORANDUM AND ORDER</u>
<u>ON PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT</u>

May 18, 2004

STEARNS, D.J.

On December 17, 2003, Jaguar Cars (Jaguar), a division of Ford Motor Company, filed this declaratory judgment action against its Wellesley, Massachusetts franchisee, Lee Imported Cars, Inc. (Lee),[1] seeking a declaration that it will not incur any liability by locating a competing Jaguar franchise in Norwood, Massachusetts. Under G.L. c. 93B, § 6(a) & (1), a motor vehicle manufacturer is prohibited from granting a franchise to a new dealer within the "relevant market area" (RMA) of an existing dealer "without good cause, in bad faith or in an arbitrary or unconscionable manner." Jaguar argues that pursuant to a September 1, 2002 amendment to section 6 of Chapter 93B, an existing dealer may protest the award of a new franchise only when the proposed location of the new dealership is within the boundaries of the existing dealer's RMA. Section 1 defines the RMA for automobile dealers situated in Norfolk County as "the entire land mass encompassed in a circle with a radius of 8 miles from any boundary of the dealership."

---

[1]"Lee," as used in this opinion, refers interchangeably to Lee Imported Cars and its President, Christopher J. Lee.

Jaguar contends that it is undisputed that the amended statute applies to this dispute and that the location of the contemplated Norwood dealership is outside the boundaries of Lee's RMA.

On January 21, 2004, Lee answered the Complaint, asserting eight affirmative defenses and four counterclaims. Lee alleges that Jaguar violated Chapter 93B and breached its existing franchise agreement by "failing to assist Lee in further penetrating its AOR [area of primary responsibility] and by appointing the New Dealership in one of Lee's substantial customer bases." Lee also alleges that Jaguar's actions breached the implied covenant of good faith and fair dealing and interfered with its advantageous business relations (with existing and prospective customers).[2]

On February 27, 2004, Jaguar filed a motion for summary judgment seeking: (1) a declaratory judgment that it may appoint a new dealer in Norwood without incurring liability to Lee under Chapter 93B or the existing franchise agreement; (2) the dismissal of Lee's counterclaims to the extent that they are premised on the locating of a new dealership in Norwood;[3] and (3) the striking of Lee's eight affirmative defenses. On March 8, 2004, the

---

[2]On January 29, 2004, Lee filed a Third-Party Complaint against "John Doe," the yet to be named Norwood franchisee, alleging that Doe will be in violation of Chapter 93B because his dealership will be located within an eight mile radius of Lee's facility. Lee also asserted a claim of intentional interference with advantageous business relations against Doe.

[3]As Jaguar notes, Lee's counterclaims allege two distinct types of harms. First, Lee alleges that Jaguar, in attempting to site a competing dealership within Lee's sales territory, violated Chapter 93B, the existing franchise agreement, the covenant of good faith and fair dealing, and tortiously interfered with its advantageous business relations. Second, Lee alleges that Jaguar's failure to adequately support the development of Lee's franchise through marketing and sales efforts breached the letter and spirit of the dealership agreement. The second set of allegations, as Jaguar argues, have nothing to

2

court held a scheduling conference at which it ordered the Clerk to set a hearing on Jaguar's motion after Lee had had the opportunity to file an opposition. On May 13, 2004, the court heard oral argument.

With its opposition, Lee also moved to strike portions of the affidavit of Jaguar's expert, George Delaney, on whom Jaguar relied to establish the distance between the Lee facility and the site of the proposed Norwood dealership. Lee argued that the distance reported by Delaney, as calculated by Urban Science Applications, Inc. (USAI), improperly measured the mileage portal to portal rather than from the outer boundary of Lee's property to the nearest boundary of the proposed Norwood site as Chapter 93B requires. Jaguar argues that the criticism is irrelevant as neither of the properties is so large as to materially alter USAI's calculation of the distance as 10.5 miles. Lee offers no expert testimony or counter-measurement contradicting the USAI calculation, and conceded at oral argument that the 10.5 mile figure is essentially correct.[4]

## FACTUAL BACKGROUND

The undisputed facts in the light most favorable to Lee are as follows. Lee became a franchisee of Jaguar in 1974, establishing a dealership on Worcester Road in Wellesley, Massachusetts. In 1987, Jaguar threatened to terminate the franchise unless Lee agreed

do with the first, and therefore do not preclude the entry of a declaratory judgment in Jaguar's favor on the Chapter 93B and tortious interference claims, and on so much of the contract claims as relates to the siting of a Jaguar dealership in Norwood.

[4]Under Chapter 93B, the burden is on the dealer to show standing to challenge an infringement of its RMA. American Honda Motor Co. v. Bernardi's, Inc., 188 F. Supp 2d, 27, 32 (D. Mass), aff'd sub nom. American Honda Motor Co. v. Richard Lundgren, Inc., 314 F.3d 17 (1st Cir. 2002).

to construct a new sales center and service facility.  On November 23, 1987, Lee executed

a Performance Agreement in which he agreed to spend a significant amount of money on

advertising, to participate in Jaguar's new sales programs, and to undertake a $ 6 million

renovation of his dealership.  In exchange, Lee was permitted to retain his existing AOR.

On January 1, 1989, Lee and Jaguar entered a new Dealer Agreement.  The

Agreement appointed Lee as the "non-exclusive authorized dealer in Jaguar Products at

the Dealership Facilities."  The Agreement together with its attached "Standard Provisions"

was acknowledged to "contain the entire agreement between the parties" and to be

governed by Massachusetts law.  Under Section 2.2 of the Standard Provisions, Jaguar

undertook to "use its best efforts to assist [Lee] in the conduct of [Lee's] Jaguar Operations

by providing a comprehensive range of support services. . . ."  Section 7.2 of the Standard

Provisions stated that:

> [Lee] acknowledges and agrees that [Jaguar] has appointed [Lee] as an
> authorized Dealer in Jaguar Products at the Dealership Facilities for the
> primary purpose of selling and servicing Jaguar Products in the market in
> which [Lee] is located (which, in the absence of a more specific definition,
> shall for the purposes of this Agreement mean the geographic area in which
> [Lee] is located and its immediate environs).  While nothing in this
> Agreement limits [Lee] as to the geographic area into which, or the persons
> to whom, [Lee] may sell Jaguar Products, [Lee] acknowledges that it has
> assumed the obligation of selling and servicing Jaguar Products in its
> market.

On October 22, 1993, Jaguar wrote to Lee confirming that his  "area of primary

sales responsibility [AOR] initially included Norwood."  The letter, however, added the

caveat that

> [o]bviously, AOR's are changeable, depending on such things as sales
> performance and the addition, deletion or relocation of dealers.  In addition,

we, of course, reserve the right to redefine AOR's in accordance with such reasonable criteria as we develop from time to time.

In 1999, Jaguar began exploring the possibility of locating new dealerships to service Boston and the area south of the City.  Upon learning of Jaguar's plans, Lee voiced concern to Jaguar that the expansion might infringe on his "bargained for" AOR. After some back and forth discussion, Jaguar informed Lee that it had chosen Braintree as the site of a new dealership, and had offered the franchise to Daniel Quirk.  Because Lee wanted to avoid litigation with Jaguar, he did not protest the location of the dealership in Braintree (as he could have done under the pre-2002 version of Chapter 93B).[5]  Rather, Lee "continued to devote substantial resources to building [his] customer base in and around Norwood." On February 14, 2000, Jaguar informed Lee that it had rescinded the offer to Daniel Quirk, but that Braintree was still considered to be a potential open point.

In January of 2003, Lee received a "Customer Footprint Map" breaking down sales and customer distances from his dealership.  It revealed that the average Lee customer lived 19.44 miles from Lee's facility and that a large percentage of Lee's customers were located in, or in close proximity to, Norwood.

In May of 2003, Jaguar notified Lee that it had authorized the siting of a new franchise in Hanover, Massachusetts.  Hanover, like Braintree, is within Lee's original AOR.  Lee estimates that the Hanover dealership drains approximately 100 vehicle sales per year from his dealership.

On August 25, 2003, Jaguar informed Lee by letter that it intended to locate a

---

[5]Lee does not allege that any promises were made by Jaguar in return.

dealership in Norwood.  The letter stated that formal notice was not required because the "proposed site is more than 8 miles from your location" and therefore "your dealership falls outside the relevant market area definition" set out in Chapter 93B.  Lee responded with letters to Jaguar on September 9, 2003, October 16, 2003, and November 11, 2003, threatening to sue over the Norwood point. Jaguar then filed this declaratory judgment action.

<u>DISCUSSION</u>

Jaguar argues that it is entitled to summary judgment on so much of the Complaint and the counterclaims that challenges the siting of a Norwood dealership because the point is outside the eight mile RMA radius defined by Chapter 93B.  Jaguar further argues that Lee has no contractually based right to object to the new dealership because the Dealership Agreement specifically stipulates that his sales area is nonexclusive.  Lee argues that the amended Chapter 93B does not apply because: (1) Jaguar began planning the siting of the Norwood dealership prior to 2002; and (2) the amendment of the statute and its retroactive application unconstitutionally infringe his substantive rights.  Neither argument carries weight.

The current amended version of Chapter 93B took effect on September 1, 2002. Section 5 of the Inserting Act states that the RMA amendment applies to "all franchise agreements existing on or after [its] effective date," unless the franchisor's notice concerning a new point "has or should have been delivered, as required by [former paragraph (1) of subsection (3) of section 4 of Chapter 93B] before the effective date of this Act."  Under former Chapter 93B, § 4(3)(1), the franchisor was required to give notice

6

to affected franchisees sixty days prior to entering a new franchise agreement. Because Jaguar has yet to enter into an agreement with a Norwood franchisee (a matter conceded by Lee at oral argument), the pre-2002 version of the statute does not apply.[6]

Lee's second argument is more involved. As clarified at oral argument, Lee takes the position that the Legislature, by applying the amendment restricting the territorial boundaries of the RMA to contracts then in existence, including his, impermissibly and unconstitutionally extinguished the substantive rights that he had acquired either under the prior version of Chapter 93B or through his dealership agreement with Jaguar. A legislature, having created a statutory right, is perfectly free to later amend it, or modify it, or abolish it altogether. And, apart from the instance of penal legislation, there is no constitutional prohibition against a legislature giving retroactive effect to its decision so long as it makes clear its intent to do so. Cf. Landgraf v. USI Film Products, 511 U.S. 244, 267-269 (1994).

Lee faces a heavy burden in attempting to overcome the presumption of validity that attaches to any properly enacted statute. "[S]uch a statute will not be set aside as a denial of due process 'if any set of facts reasonably may be conceived to justify it.'" American Manufacturers Mut. Ins. Co. v. Commissioner of Ins., 374 Mass. 181, 190 (1978). See also Animal Legal Defense Fund, Inc. v. Fisheries & Wildlife Board, 416 Mass. 635, 640-641 (1993). As the Court in American Honda Motor Co. v. Richard Lundgren, Inc., 314 F.3d 17 (1st Cir. 2002), explained, the Legislature amended Chapter 93B in 2002, to stiffen the

---

[6]Jaguar's letter notifying Lee of its plan to site a dealership in Norwood was mailed in August of 2003, well after the effective date of the amendment.

"bright line" rule defining an RMA, as a means of eliminating the protracted litigation over dealer standing that had been engendered by the prior statutory definition. Id. at 18-19. This is a sufficient reason to satisfy the highly deferential "rational basis" test of a statute's validity. Cf. Fireside Nissan, Inc. v. Fanning, 30 F.3d 206, 219-220 (1st Cir. 1994).

Lee's contractual argument is simply unsupported by his dealership agreement with Jaguar. The pre-2002 Dealer Agreement appointed Lee "as a non-exclusive authorized dealer in Jaguar Products at the Dealership Facilities." This same language has been held by the Florida courts as sufficient to reserve to Jaguar the right to appoint such additional dealers as it chooses.

> The Dealer Agreement clearly does not make [the dealer] the exclusive authorized Jaguar dealer in its location. To the contrary, it appointed [the dealer] "as a non-exclusive authorized dealer in Jaguar Products at the Dealership Facilities." . . . If Jaguar was agreeing not to add dealerships within a certain distance of [the dealer], the Dealer Agreement would say so.

Crown Auto Dealerships, Inc. v. Jaguar Cars, No. 96-4657, 1996 WL1060445 (Fla. Div. Admin. Hrgs. Dec, 18, 1996), adopted by Order dated March 19, 1997, aff'd, 702 So.2d 492 (Fla. App. 1997). Courts construing similar language in other franchise agreements have held almost uniformly that an appointment as a "non-exclusive" dealer forecloses any claim of territorial exclusivity. See, e.g., Sandhill Motors, Inc. v. American Motors Sales Corp., 667 F.2d 1112, 1113 & n.3 (4th Cir. 1981) (holding that a dealer agreement stating that the "Dealer shall have the non-exclusive right" to purchase and resell the manufacturer's products foreclosed a common law challenge to the appointment of a new franchisee in the dealer's market, since "the dealer franchise agreement explicitly provided that it was non-exclusive"); Harley-Davidson Motor Co. v. Motor Sport, Inc., 6 F. Supp. 2d

996, 1001 (E.D. Wis. 1998) (holding that the appointment of a motorcycle dealer as a "non-exclusive distributor" of motorcycles was "clear and unambiguous" in giving the manufacturer the right to appoint additional distributors); <u>Midwest Great Dane Trailers, Inc. v. Great Dane Limited Partnership</u>, 977 F. Supp. 1386 (D. Minn. 1997) (holding that a dealership agreement stating that the "Distributor does not have the exclusive right to sell Great Dane products within such territory" permitted the manufacturer to appoint an additional dealer within the franchisee's AOR). Consequently, Lee has no enforceable contractual right that would prevent Jaguar from appointing additional dealers within his AOR so long as the dealer point lies outside of the eight mile RMA protected by Chapter 93B.[7] Consequently, the contractual claim fails.[8]

<u>ORDER</u>

For the foregoing reasons, it is hereby <u>ADJUDGED</u> and <u>DECLARED</u> that Jaguar

---

[7]Lee's assertion that he is entitled to extra-contractual protection under his claim for breach of the covenant of good faith and fair dealing rests on a misunderstanding of the doctrine. The covenant is directed to the manner in which the parties perform under an agreement – it may not be invoked to create rights and duties not otherwise provided for in the contractual relationship. <u>Uno Restaurants, Inc. v. Boston Kenmore Realty Corp.</u>, 441 Mass. 376, 385 (2004). Nor can Lee defeat the terms of the integrated dealership agreement by reference to an earlier alleged promise contradicting its unambiguous non-exclusivity provision. <u>Sound Techniques, Inc. v. Hoffman</u>, 50 Mass. App. Ct. 425, 429 (2000).

[8]Jaguar also argues that Lee's additional affirmative defenses (*e.g.*, no actual case or controversy, lack of diversity jurisdiction, and estoppel) should be stricken. Lee's brief addresses only the estoppel issue, and in doing so, as Jaguar correctly notes, confuses the defense of equitable estoppel, <u>see</u> <u>Boylston Development Group, Inc. v. 22 Boylston St. Corp.</u>, 412 Mass. 531, 542 n.17 (1992), with a claim for quasi-contractual damages under a theory of promissory estoppel, <u>see</u> <u>Loranger Constr. Corp. v. E.F. Hauserman Co.</u>, 376 Mass. 757, 760-761 (1978). <u>See</u> also <u>Dunkin' Donuts Inc. v. Panagakos</u>, 5 F. Supp. 2d, 57, 61 (D. Mass. 1998) (estoppel unavailable to a franchisee where the franchise agreement specifically reserved to the franchisor the right to appoint other dealers).

will not violate either Chapter 93B or its franchise agreement with Lee by establishing a Jaguar franchise at the proposed dealership point in Norwood, Massachusetts. Accordingly, Jaguar's motion for summary judgment is <u>ALLOWED</u> as to Lee's Chapter 93B counterclaim, Lee's intentional interference counterclaim, and so much of Lee's breach of contract counterclaim and breach of the implied covenant of good faith and fair dealing counterclaim that is based on allegations relating to the siting of the Norwood franchise. Jaguar's motion to strike Lee's eight affirmative defenses is also <u>ALLOWED</u>.  Lee's Third-Party Complaint against John Doe is <u>DISMISSED</u>.  Lee's motion to strike portions of the Delaney affidavit is <u>DENIED</u>.

SO ORDERED.

/s/ Richard G. Stearns

_____
UNITED STATES DISTRICT JUDGE